NEW YORK, LAKE ERIE AND WESTERN RAIL-
ROAD COMPANY *v.* PENNSYLVANIA.

ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 591. Argued April 23, 1894. — Decided May 14, 1894.

The New York and Erie Railroad Company was a corporation organized under the laws of, and having its principal place of business in, the State of New York. Its object was to construct and operate a railroad between the Hudson River and Lake Erie. In 1841 the legislature of Pennsylvania granted to it the right to construct a few miles of its proposed road in the county of Susquehanna in that State. In 1846, no work having been done on the road, the legislature of Pennsylvania granted to it the further right to construct a portion of its road in Pike County, and further enacted that, after the road should be completed to Lake Erie, the company should pay annually into the treasury of the State of Pennsylvania the sum of ten thousand dollars, and that the stock of the road should be subject to taxation in Pennsylvania to an amount equal to the construction of so much of the road as was in that State. The road was then completed from the Hudson to Lake Erie, passing through portions of Pike County and of Susquehanna County, and the requisite payments have been made, first by the original company, and since by its successors through foreclosures of mortgages. The plaintiff in error is now possessed of the property and of the rights under the acts of 1841 and 1846, and has its principal place of business in the city of New York. In 1885 the legislature of Pennsylvania assessed an annual tax of three mills on the dollar on moneys, loans, stocks, moneyed capital, etc., in the hands of individual citizens of that State, and required the treasurer of each private corporation, incorporated under the laws of any other State and doing business in Pennsylvania, when making payment of interest upon its bonds, etc., held by residents of that State, to assess the tax upon it, and to report to the auditor general of

the State, and to pay the tax so assessed and collected into the state treasury. In accordance with this law the treasurer of the railroad company in 1888 reported the nominal value of all its scrip, bonds, and evidences of indebtedness to be $78,573,485.10, and the nominal value of all such known to be owned by residents of Pennsylvania as "None." Thereupon the State, by its attorney general, commenced an action to recover of the company a tax of three mills on the whole amount returned. In the course of the trial it was found that the amount of bonds of the company held and owned by residents of Pennsylvania aggregated $841,000, and judgment was given for a tax of three mills on that amount, which was affirmed on appeal by the Supreme Court of the State. *Held,*

(1) That the Commonwealth of Pennsylvania cannot, consistently with the Constitution of the United States, impose upon the New York, Lake Erie and Western Railroad Company the duty, when paying *in the city of New York* the interest due upon scrip, bonds, or certificates of indebtedness held by residents of Pennsylvania, of deducting from the interest so paid the amount assessed upon bond and moneyed capital in the hands of such residents of Pennsylvania.

(2) That the fourth section of the act of 1885, in its application to the New York, Lake Erie and Western Railroad Company, impairs the obligation of the contract originally made by the New York and Lake Erie Railroad Company and the State of Pennsylvania, as disclosed by the acts of 1841 and 1846, and by what was done by the companies, upon the faith of those acts.

THIS writ of error brings up for review a judgment of the Supreme Court of Pennsylvania, affirming a judgment of the Court of Common Pleas of Dauphin County in that State, against the New York, Lake Erie and Western Railroad Company, a New York corporation, for the amount of certain taxes assessed by and alleged to be due to Pennsylvania for the year 1888 in respect to certain bonds and evidences of indebtedness issued by that company, and which were ascertained by the court to have been held and owned by residents of that State.

The judgment of the Court of Common Pleas was affirmed upon the authority of *Commonwealth v. New York, Lake Erie & Western Railroad,* 129 Penn. St. 463, and *Commonwealth v. Lehigh Valley Railroad,* 129 Penn. St. 429.

The State based its claim against the railroad company upon a statute enacted on the 30th day of June, 1885. The

company insisted that that statute, if applied to it in respect to taxes due and payable in Pennsylvania by residents of that State, was repugnant to the Constitution of the United States.

The relations existing between the plaintiff in error, as the successor of the New York and Erie Railroad Company, and the Commonwealth of Pennsylvania, at the time of the passage of the statute of 1885, are shown by legislative enactments to which some reference should be made.

From the preamble of a statute approved February 16, 1841, it appears to have been represented to the General Assembly of Pennsylvania that the New York and Erie Railroad Company, having authority to construct a railroad from the city of New York to Lake Erie through the southern tier of counties in the State of New York, was hindered in building its road through Broome County bordering on Pennsylvania by a mountain of such magnitude as to require tunnelling or to be surmounted by stationary power at immense expense, and that a level and easy route could be established if the proposed road followed the valley of the Susquehanna River in Pennsylvania, a distance of about fifteen miles, and near to Broome County, New York. In consequence of these representations, and to maintain " amity between adjoining States in respect to their internal improvement operations," it was provided that the railroad company " shall have full power to extend their road through such portion of the county of Susquehanna as in the proper construction of their road they may find it necessary." This statute contained numerous provisions for the protection of both the railroad company as well as the public, one of which provided that, if any buildings, fences, timber or other property, situated in Susquehanna County, should be destroyed by fire occasioned by sparks falling from locomotive engines upon the road, the company should be liable to make full compensation for all damages sustained in consequence of such fire, § 11, — a liability which, according to the statement of counsel, Pennsylvania does not impose upon its own corporations. As these provisions do not affect the particular questions now before us, they need not be here set out.

By an act of the General Assembly of Pennsylvania, ap-

proved March 26, 1846, and supplementary to that of 1841, authority was given the New York and Erie Railroad Company to construct its road through a portion of Susquehanna and Pike Counties. That act, among other things, required the company to so regulate its tolls that the charge on anthracite coal should not exceed one and one-half cents per ton per mile. § 3. It also made it the duty of the president and managers of the company, as soon as its railroad was completed through Susquehanna and Pike Counties, to prepare a full and accurate account of the cost of that portion of the road within Pennsylvania and communicate the same to the auditor general of the Commonwealth; and after the road was completed and in operation to Dunkirk, or became connected at the western end with any other improvement extending to Lake Erie, the company should pay into the treasury of this State, annually, in the month of January, ten thousand dollars — any neglect or refusal to make such payment to work a forfeiture of the rights and privileges granted by the act. § 5.

That act also provided that the stock of the company to an amount equal to the costs of the construction of that part of its road situated in Pennsylvania should be subject to taxation by that State, in the same manner, at the same rate as other similar property; and the company should pay into the treasury of the Commonwealth any tax to which that proportion of stock was liable, and make, annually, a statement to the legislature, under oath, of its affairs and of the business done on said road during the previous year — such statement to contain a full and accurate account of the number of passengers, amount and weight of produce, merchandise, lumber, coal, and minerals transported on its said road, east of Dunkirk and west of Piermont. § 6.

Under the authority of these statutes the railroad company constructed, and has ever since maintained, its road through parts of Pennsylvania. Of the company's road, extending from Jersey City to Dunkirk and Buffalo, a distance of 446 miles, about 42 miles are within the counties of Pike and Susquehanna.

The taxes in question were imposed under the above statute of 1885, which assessed an annual tax of three mills on the dollar for state purposes, on all mortgages, money owing by solvent debtors, whether by promissory note, or penal or single bill, bond, or judgment, also on all articles of agreement and accounts bearing interest, owned or possessed by any person or persons whatsoever, (except notes or bills for work or labor done, and obligations given to banks for money loaned and bank notes,) on all public loans or stocks, (except those issued by Pennsylvania or the United States,) on all moneys loaned or invested in any other State, and on all other moneyed capital in the hands of individual citizens of Pennsylvania — the property and interests so taxed being exempted from all taxation, except for state purposes, and the act not to apply to building and loan associations. Penn. Laws, 1885, 193, § 1.

By the fourth section of the act it was provided that " hereafter it shall be the duty of the treasurer of each private corporation, incorporated by or under the laws of this Commonwealth, or the laws of any other State, or of the United States, and doing business in this Commonwealth, upon the payment of any interest on any scrip, bond, or certificate of indebtedness, issued by said corporation to residents of this Commonwealth, and held by them, to assess the tax imposed and provided for state purposes upon the nominal value of each and every said evidence of debt, and to report on oath, annually, on the first Monday in November to the auditor general the amount of indebtedness of the corporation owned by residents of this Commonwealth, as nearly as the same can be ascertained ; and it shall be his further duty to deduct three mills on every dollar of the interest paid as aforesaid, and return the same into the state treasury within fifteen days after the thirty-first day of December in each year; and his compensation for his services shall be the same that city and borough treasurers receive for similar services ; and for every failure to assess and pay said tax and make report as aforesaid the auditor general shall add ten per centum as a penalty to the amount of the tax; on payment of said tax by

a corporation the bonds, certificates, or other evidences of indebtedness issued by it shall be exempt from all other taxation in the hands of the holders of the same."

In November, 1888, the treasurer of the railroad company made the following report under oath to the auditor general of Pennsylvania:

"In accordance with the provisions of the fourth section of the act of June 30, 1885, and the requirements of your department, as treasurer of the New York, Lake Erie and Western Railroad Company, I make the following report of the indebtedness of said company for the year ending first Monday of November, 1888: ··

"Nominal value of all scrip, bonds, and evidences of indebtedness.............. $78,573,485 10

"Nominal value of all scrip, bonds, and evidences of indebtedness known to be owned by residents of Pennsylvania...          None.

"Nominal value of all scrip, bonds, and evidences of indebtedness none of which are known to be owned by residents of Pennsylvania ...................... $78,573,485 10"

This report was accompanied by a communication from the treasurer of the railroad company, stating that it was made in deference to the wishes of the auditor general, but under protest and not in admission of any authority contained in the 4th section of the act of 1885.

In 1890 the Commonwealth, by its attorney general, proceeded against the railroad company in the Court of Common Pleas of Dauphin County to recover the amount claimed from it under section four of the act of 1885 for the year ending first Monday of November, 1888, for taxes on its scrip, bonds, and certificates of indebtedness held by residents of Pennsylvania. The amount so claimed was $234,490.86 with 12 per centum interest from 60 days after the settlement of the tax account by the auditor general. That officer settled the account upon the basis that the railroad company was subject

to taxes in Pennsylvania on the nominal value of all the scrip, bonds, and certificates of indebtedness issued by the company, and then outstanding, to wit, $78,573,485.10. Having no information whatever as to ownership, the auditor general arbitrarily assumed in the settlement that all the company's outstanding scrip, bonds, and certificates of indebtedness were owned by residents of Pennsylvania.

A trial by jury was dispensed with by the parties, and the case was heard by the court. From the evidence in the cause the court found the following facts:

"1. Defendant is a corporation chartered by the State of New York, and having its principal office and place of business in the city of New York. It has and exercises the right of way, under a special act of the legislature of the State of Pennsylvania, to run its railroad for somewhat more than thirty miles through the State of Pennsylvania, for which it pays annually to the State the sum of ten thousand dollars. 2. The settlement appealed from is based upon a report made by the treasurer of defendant to the auditor general of Pennsylvania for the year 1888, which contains a detailed statement of the several issues of bonds, scrip, and certificates of indebtedness by defendant and the corporation whose successor it is, amounting in all to $78,573,485.10, in which it is stated that none of the indebtedness is known to be owned by residents of Pennsylvania, and that it is believed by the officers of the company that nearly all is owned by non-residents of Pennsylvania. 3. In the settlement appealed from defendant is charged with tax upon the nominal value of all scrip, bonds, and certificates of indebtedness issued by it, and the corporation whose successor it is, and owing by it, amounting to the sum of $78,573,485.10, as stated in said report. 4. All the evidences of indebtedness owing by defendant were created and issued under authority granted by the legislature of the State of New York, and were issued, sold, and delivered in the city of New York, in said State, or in London, England, and the interest accruing from time to time thereon is payable and paid in said city of New York and in London. The right to the interest is evidenced by coupons payable to the bearer,

which, when due, are separated from the bonds and are presented for payment at the office of defendant in the city of New York by banks, bankers, and their messengers on behalf of themselves and their correspondents in other places, by whom the coupons have been transmitted, either as cash or for collection; and it is practically impossible for the treasurer or other officers of defendant, at the time the coupons are presented, to ascertain the residence of the owner of the bonds from which they have been separated, because of the large number of coupons presented at the dates when they become due, the whole number of coupons due semi-annually amounting to more than one hundred and fifty thousand, and as many as twenty thousand being presented in a single day; and for the further reason, that the bankers and their messengers, when they present the coupons, in very many instances do not know who are the owners of the bonds from which they have been detached, and could not be compelled to disclose if they did know, as the coupons are payable to bearer, and a refusal of the treasurer of the company to pay the coupons on presentation, except upon condition of the ownership being disclosed, would subject it to the risk and expense and loss of credit of having the coupons protested for non-payment. Some of the evidences of indebtedness are coupon bonds issued and payable to bearer, and others are coupon bonds which may be registered or not at the option of the holders or owners. 5. Holders of the evidences of indebtedness of defendant are entitled to vote for directors of this company, and a register is kept in the office of defendant, in which all holders of such evidences of indebtedness are required to register between sixty and thirty days prior to any election for directors at which they desire to vote. The register for the year 1888 shows an ownership of bonds to the amount of $28,562,700, of which we find that $338,000 were owned by residents of Pennsylvania, but this ownership does not appear on the register. 6. A record of registered bonds is also kept in the office of defendant, and in 1888 there were registered $11,124,300 in value of bonds. Of this amount $2,054,000 were owned by residents of Pennsylvania, $1,551,000 of which were owned by Pennsylvania cor-

porations, leaving $503,000 which were owned by individual residents of Pennsylvania. 7. There is no evidence in this case from which we could find that any particular bonds, other than those which make up the two amounts of $338,000 and $503,000 as above stated, were held or owned, during the year 1888, in Pennsylvania; nor is there any evidence tending to show that the treasurer of defendant, at the time the coupons were paid, could know that any, and if any, which, of the coupons, other than those which belonged to the bonds above specified, belonged to bonds held or owned in this State; and we, therefore, do not find that there were any other bonds, or any greater amount of bonds, held in Pennsylvania, during the year for which the tax is claimed in this settlement, than the bonds specified in findings of fact numbers five and six."

Subsequently, the court found the following additional facts: " 1. The treasurer of defendant is, and was, in 1888, a resident of the State of New York. 2. The legislation of the State of New York constituting the charter of the company, and in pursuance of which the bonds and mortgages were issued, is silent upon the subject of their taxation by the State of Pennsylvania, or the assessment or collection of a tax thereon by the company or its officers, and that the legislation of the State of Pennsylvania authorizing the construction of a portion of its road through a portion of said State is silent upon the subject of the taxation of the bonds and mortgages of the company, or of the collection of a tax thereon by the company or its officers. 3. The railroad of defendant extends from New York City to Buffalo, a distance of 446 miles, and that, so far as the State of Pennsylvania is concerned, the business of the company consists chiefly in the transportation of freight and passengers from or to other States, into, out of, or through the State of Pennsylvania."

It was adjudged that the defendant was liable for the tax in respect of the bonds held and owned in 1888 by residents of Pennsylvania, represented by the two items of $338,000 and $503,000 — aggregating $841,000 — and not on any other or greater amount of bonds. And that view was approved by the Supreme Court of Pennsylvania.

*Mr. E. J. Phelps* and *Mr. M. E. Olmsted* for plaintiff in error.

*Mr. W. U. Hensel,* Attorney General of the Commonwealth of Pennsylvania, for defendant in error.

That the plaintiff in error comes within the terms of section 4 of the act of June 30, 1885, is not denied. It is admitted that it is doing business in this Commonwealth. There is no question about the amount of bonds taxed being held by residents of the State; and further, we do not know of any objections by the owners of the bonds to the payment of the tax. The tax is against the bondholder, not against the company. The company is asked only to retain it when it pays the interest to the bondholder. It does not allege ignorance of the law nor of the duty it owed to the Commonwealth under the law. It had made no attempt to comply with the requirement of the law, but protested against its enforcement and comes before this honorable court on this ground and this only.

This act of Assembly applies to all corporations, domestic or foreign, and asks them only to retain the tax from such as they can ascertain to be residents of the State. This is surely a reasonable requirement and this corporation should yield obedience to it in common with all others. As applicable to such corporations as are solely domestic, the statute has received judicial construction by the Supreme Court of Pennsylvania and by the Supreme Court of the United States. This principle was decided in the case of *Commonwealth of Pennsylvania* v. *Bell's Gap Railroad Company* in the Supreme Court of Pennsylvania, and upon appeal taken to the Supreme Court of the United States, Mr. Justice Bradley, delivering the opinion of the court, said :

" 3. *That the corporation is taxed for property it does not own.* This objection is not true in point of fact. The corporation, as the debtor of its bondholders, holding money in its hands for their use, namely, the interest to be paid, is merely required to pay to the Commonwealth out of this fund the proper tax

due on the security. The tax is on the bondholder, not on the corporation. This plan is adopted as a matter of convenience, and as a secure method of collecting the tax. That is all. It injures no party. It certainly does not infringe the Constitution of the United States by making one party pay the debts and support the just burdens of another party, as is implied in the objection." *Bell's Gap Railroad Co.* v. *Pennsylvania*, 134 U. S. 232, 239.

What relation does this company bear to the State of Pennsylvania for purposes of taxation under its revenue laws?

We contend that it is *not*, in all respects, that of a foreign corporation. It has no right to do business in the State without permission. It gets this permission by statutory authority, and therefore it comes in under the laws of the State, is amenable to them, and should consent to their reasonable requirements. This was a voluntary act upon the part of the company. "Doing business" in the State, by reason of the laws thereof, it is a quasi-domestic corporation, and in any event it is subject to the tax laws of the State. This rule is applicable to domestic or foreign corporations. Wood's Railway Law, 27, 28.

A corporation, like an individual, may have a domicil in one State and a residence in another. Its domicil is in the State creating it, but its residence is in the place where its principal operations are conducted, and may be in a foreign State, as well as in the State to which it owes its corporate life. Id. 28.

We further contend that doing business in this State under its laws, renders the corporation liable and subject to the revenue laws of the State. This position is fully covered by the case of *Erie Railway Co.* v. *Pennsylvania*, 21 Wall. 492. See also *Paul* v. *Virginia*, 8 Wall. 168 ; *Philadelphia Fire Association* v. *New York*, 119 U. S. 110. See also *State Tax on Foreign-held Bonds*, 15 Wall. 300.

From these authorities it plainly appears that this company, having voluntarily obtained a right to do business in the State of Pennsylvania, and actually doing the same to a very large amount, places itself under the revenue laws of the Commonwealth of Pennsylvania, and it should bear its proportionate

share of the burdens imposed upon it in common with all other corporations, domestic or foreign, within the State. The legislature surely has the right to impose this condition upon this company, and it has generally exercised that right against all corporations within the State. This corporation obeys this law so far as making its report to the auditor general of the State is concerned, and it might as well protest against the right to require a report and refuse to make it as to contest the right of the State to impose the other condition upon it of retaining the tax upon the resident bondholder of the State.

We also refer the Court to the opinion of the Supreme Court of Pennsylvania rendered in this case. Justice Clark, who delivered that opinion, has entered into a very full and complete discussion of the question that is before the court in this case, and cites several authorities not cited in this argument, and we also refer to his cogent reasoning bearing upon the legal question involved and the legislative right to require the condition in controversy in this case of any foreign corporation doing business within the State.

This question is an important one to the Commonwealth of Pennsylvania. If it is unconstitutional to require this condition to be performed by the treasurer of a foreign corporation, it is equally unconstitutional to require any of these corporations to make a report to the accounting officers of the Commonwealth at all, as the report is only made for the purposes of taxation. If this right is denied to the Commonwealth of Pennsylvania, it would be an impossibility for it to reach the resident bondholders of the State for purposes of taxation, as required by the act of Assembly.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

The principal question in the case is whether the Commonwealth of Pennsylvania may, consistently with the Constitution of the United States, impose upon the New York, Lake Erie and Western Railroad Company the duty — when paying *in the city of New York* the interest due upon scrip, bonds, or

certificates of indebtedness held by residents of Pennsylvania — of deducting from the interest so paid the amount assessed upon bonds and moneyed capital in the hands of such residents of Pennsylvania.

The court recognizes the far-reaching consequences of its determination of this question, and has, therefore, bestowed upon it the careful consideration which its importance demands.

It is contended that, in our examination of this question, there are certain principal facts found by the Court of Common Pleas, which, so far as they are pertinent, must be accepted as the basis of any decision that may be rendered. *Commonwealth* v. *Westinghouse Electric & Mfg. Co.*, 151 Penn. St. 265, and authorities there cited. These facts are: That all the evidences of debt owing by the railroad company were created and issued under the authority of the State of New York, and were sold and delivered in that State or in London; that the interest on such indebtedness is payable and paid in the cities of New York and London; that the interest coupons are payable to bearer, and when due are separated from the bonds and presented for payment at the company's office in New York, by banks, and their messengers, on their own behalf or on behalf of their correspondents in other places, by whom the coupons have been sent either as cash or for collection; and that it is practically impossible for the company's officers, at the time the coupons are presented, to ascertain the residence of the owners of the bonds from which the coupons were detached — the number of coupons due semi-annually amounting to more than one hundred and fifty thousand, and those presented in a single day often amounting to twenty thousand, and the bankers and their messengers, at the time of presenting their coupons, not knowing, in very many instances, who own the bonds, and, as the coupons are payable to bearer, could not be compelled to disclose the ownership of either bonds or coupons.

In our judgment, however strongly those facts may indicate the injustice that would be done to the railroad company by subjecting it to the provisions of the fourth section of the

statute of 1885, and although such facts are important in some aspects of this case to be presently examined, they are not, in themselves, decisive of the question to be here determined. It is not enough to justify the overthrow, by judicial decision, of a state law imposing taxation, simply to show that such law operates unjustly. So far as the courts of the Union are concerned, they must recognize and, when necessary to do so in cases within their jurisdiction, enforce the statutes of the several States, unless those statutes encroach upon legitimate national authority, or violate some right granted or secured by the Constitution of the United States. *Kirtland* v. *Hotchkiss,* 100 U. S. 490, 498. The question here is not one of mere injustice done to the railroad company, but one of power or authority in Pennsylvania to compel that corporation to do what the act of 1885 is held by the state court to require at its hands in respect to taxes upon bonds and moneyed capital in the hands of individual citizens of Pennsylvania.

The fundamental propositions upon which the argument of counsel for the State is based are that the New York, Lake Erie and Western Railroad Company is a private corporation of another State; that it has no right to do business in Pennsylvania without the permission of that State, and that it is, therefore, subject at all times to such reasonable regulations as may be prescribed by Pennsylvania, whether those regulations relate to taxation or to the business or property of the company in that Commonwealth. This view was expressed by the Supreme Court of Pennsylvania in *Commonwealth* v. *New York, Lake Erie & Western Railroad,* 129 Penn. St. 463, 476, in the following language : " It was competent for the legislature of Pennsylvania to impose as a condition upon foreign corporations doing business in this State that they shall assess and collect the tax upon that portion of their loans in the hands of individuals resident within this State, and otherwise comply with the provisions of the act of 1885. The act imposes no tax upon the company ; it simply defines a duty to be performed, and fixes a penalty for disregard of that duty. The legislature having so provided, compliance with the act may, in some sense, be said to form one of the conditions upon

which corporations may do business within the State, and the corporation continuing its business subsequently would be taken to have assented thereto. There is, however, a condition, implied even in the case of domestic corporations, that they will be subject to such reasonable regulations, in respect to the general conduct of their affairs, as the legislature may from time to time prescribe, and such as do not materially interfere with or obstruct the substantial enjoyment of the privileges the State has granted. *Chicago Life Ins. Co.* v. *Needles*, 113 U. S. 574. If this be so as to corporations who are entitled to their charter privileges upon the footing of a contract, how much the more is it so as to corporations who are merely permitted by the legislature to do business within this State as a matter of grace and not of right?"

It is found, as a fact in this case, that so far as Pennsylvania is concerned, the business of the railroad company consists chiefly in the transportation of freight and passengers from or to other States, into, out of, or through that State. We are not sure that the court below, or counsel here, intended to be understood as claiming that it was competent for Pennsylvania to make compliance with the fourth section of the act of 1885 a condition of the right of the railroad company to continue the use of its track in Pennsylvania for purposes of interstate commerce. Some of the considerations necessary to be borne in mind, when any such question arises for determination, are adverted to in the recent decision of this court in *Crutcher* v. *Kentucky*, 141 U. S. 47, 59. But no such question is here presented. The Commonwealth of Pennsylvania has not attempted to impose any such condition upon the corporations embraced by the statute of 1885.

Assuming, for the purposes of this case, the correctness of the position taken by the learned attorney general of Pennsylvania that the commerce clause of the Constitution of the United States has no bearing upon the present inquiry, we are of opinion that the fourth section of the act of 1885, in its application to this railroad company, impairs the obligation of the contract between it and Pennsylvania, as disclosed by the acts of 1841 and 1846, and by what was done by that company

upon the faith of those acts. Those acts prescribe the terms and conditions upon which Pennsylvania assented to the company's constructing and operating its road through limited portions of its territory. Those terms have been fully indicated in the statement of this case, and need not be repeated. When the State, by the acts of 1841 and 1846, gave this assent the possibility that the company might misuse or abuse the privileges granted to it, or violate the provisions of those acts, was not overlooked; for, by the seventh section of the act of 1846, into which, by its second section, all the restrictions, prohibitions, privileges, and provisions contained in the act of 1841 were imported, it was declared that the right of the legislature to repeal it was reserved, "if the said company shall misuse or abuse the privileges hereby granted, or shall violate any of the privileges [provisions] of this act." And the question whether the privileges granted had been misused or abused, or the provisions of the act violated, was to be determined by *scire facias* issued out of the Supreme Court of Pennsylvania. § 7. There is no claim in the present case of any violation by the railroad company of the provisions of the acts of 1841 and 1846 specifying the terms and conditions upon which it acquired the right, so far as it depended upon state legislation, to enter Pennsylvania and construct and operate a part of its road within the territory of that Commonwealth. Consistently with those terms and conditions, Pennsylvania cannot withdraw the assent which it gave, upon a valuable consideration, to the construction and operation of the defendant's road within its limits. Nor can the right of the company to enjoy the privileges so obtained be burdened with conditions not prescribed in the acts of 1841 and 1846, except such as the State, in the exercise of its police powers for purposes of taxation, and for other public objects, may legally impose in respect to business carried on and property situated within its limits.

The argument in behalf of the State leads, logically, to the conclusion that notwithstanding the provisions of the acts of 1841 and 1846, prescribing the terms upon which the company acquired the privilege of constructing and operating its road

in that State, Pennsylvania could, in its discretion, change those terms and impose any others it deemed proper. If the State amended those acts so as to increase the sum to be paid annually into the state treasury, as a bonus, from ten thousand to one hundred thousand dollars, the argument made by its attorney general would sustain such legislation upon the ground that the State, at the outset, could have exacted the larger amount from the company as a condition of its entering the State with its road. To any view which assumes that the State could — so long, at least, as the railroad company performed the conditions of the acts of 1841 and 1846 — burden the company with conditions that would substantially impair the right to maintain and operate its road within Pennsylvania upon the terms stipulated in those acts, we cannot give our assent. No such terms as those named in the act of 1885 were imposed prior to the building of the road in Pennsylvania, and the road having been constructed in that State upon the faith of the legislation of 1841 and 1846, and with the assent of the State given for a valuable consideration paid by the company, its maintenance in Pennsylvania cannot be made the pretext for imposing such conditions as those prescribed in the act of 1885.

But it is said that regulations prescribed after the construction of the road, applicable to railroad companies doing business in the State, — such regulations being reasonable in their character, — should be deemed to have been within the contemplation of the parties when those acts were passed, and, therefore, not in violation of the agreement under which the company entered the State for the purpose of transacting business there; and that it should not be assumed that the State intended to surrender or bargain away its authority to establish such regulations.

Of the soundness of this general proposition, there can be no doubt, in view of the settled doctrines of this court. The contract in question left unimpaired the power of the State to establish such reasonable regulations as it deemed proper touching the management of the business done and the property owned by the railroad company in Pennsylvania, which

did not materially interfere with or obstruct the substantial enjoyment of the rights previously granted. But the fourth section of the act of 1885 is not within that category. It assumes to do what the State has no authority to do, to compel a foreign corporation to act, *in the State of its creation,* as an assessor and collector of taxes due in Pennsylvania from residents of Pennsylvania. Under the sanction of the laws of New York, the defendant corporation executed prior to the passage of the act of 1885 bonds, with interest coupons attached, payable in that State and not elsewhere. It gave mortgages to secure the payment of those bonds and coupons, according to their tenor. Neither the bonds, nor the coupons, nor the mortgages, contain anything that would, in law, justify the company in refusing to meet its obligations, according to their terms and without deduction on account of taxes due from the holders of such bonds or coupons residing in another State. We have seen that the bonds and coupons in question were payable to bearer, and that it was practically impossible for the company, when the coupons were presented for payment, to ascertain who, at that time, really owned them or the bonds from which they were detached, or whether the coupons were owned by the same person or corporation that owned the bonds. This fact is quite sufficient to show the unreasonable character of the regulations attempted to be applied to this company under the act of 1885. This view is strengthened by the fact that the coupons were negotiable instruments, and, being detached from the bonds, were separate obligations, passing by delivery, upon which an action could have been maintained by the holder, independently of the ownership of the bonds. Such is the settled doctrine of commercial law as declared by this court. *Clark* v. *Iowa City,* 20 Wall. 583; *Hartman* v. *Greenhow,* 102 U. S. 672, 684; *Koshkonong* v. *Burton,* 104 U. S. 668. And it is the doctrine of the Supreme Court of Pennsylvania, which has declared that "the coupons of railroad bonds are negotiable instruments, and may be sued on by the holder separately from the bonds, and interest from the date of demand and refusal of payment may be recovered." *County of Beaver* v. *Armstrong,* 44 Penn. St. 63.

If Pennsylvania, in order to collect taxes assessed upon bonds issued by its own corporations and held by its resident citizens, could require those corporations to deduct the required amount from the interest when the coupons are presented by holders known at the time by the corporation paying the interest to be residents of that State — and it may be admitted, in this case, that the State, if not restrained by a valid contract to which it was a party, could establish such a regulation — it does not follow that the State may impose upon foreign corporations, because of their doing business in that State with its permission given for a valuable consideration, any duty in respect to the mode in which they shall perform their obligations in other States.

The New York, Lake Erie and Western Railroad Company is not subject to regulations established by Pennsylvania in respect to the mode in which it shall transact its business in the State of New York. The money in the hands of the company in New York to be applied by it in the payment of interest, which by the terms of the contract is payable in New York and not elsewhere, is property beyond the jurisdiction of Pennsylvania, and Pennsylvania is without power to say how the corporation holding such money, in another State, shall apply it, and to inflict a penalty upon it for not applying it as directed by its statutes; especially may not Pennsylvania, directly or indirectly, interpose between the corporation and its creditors, and forbid it to perform its contract with creditors according to its terms and according to the law of the place of performance. No principle is better settled than that the power of a State, even its power of taxation, in respect to property, is limited to such as is within its jurisdiction. *State Tax on Foreign-held Bonds*, 15 Wall. 300, 319; *Railroad Co.* v. *Jackson*, 7 Wall. 262; *St. Louis* v. *Ferry Co.*, 11 Wall. 423; *Delaware Railroad Tax*, 18 Wall. 206.

The fallacy of the contrary view is in the assumption that this railroad company, by purchasing from Pennsylvania the privilege of constructing and operating a part of its road through the territory of that State, thereby impliedly agreed

to submit to such regulations as that State should, at any subsequent period, adopt in respect to the mode in which it should, in the State of New York, apply money in its hands in discharge of the obligation to pay interest to the holders of its bonds residing in Pennsylvania. But, for the reasons stated, this assumption is unwarranted by any sound principle of law, or by the circumstances under which the railroad company obtained the assent of Pennsylvania to build and maintain its road through that State.

It is due to the learned counsel who argued this case that something be said, before concluding this opinion, about certain authorities upon which great reliance was placed.

Reference was made by counsel for the company to the decision of this court in the case of *State Tax on Foreign-held Bonds*, 15 Wall. 300, 320, which case involved the validity of a Pennsylvania statute of 1868, requiring corporations, created by and doing business in that State, to deduct from the interest paid on its obligations the tax assessed on such interest by the State. It was attempted to make that statute applicable to interest payable on bonds held by non-residents of Pennsylvania. This court said: "The tax laws of a State can have no extra-territorial operation, nor can any law of a State inconsistent with the terms of a contract made with, or payable to, parties out of the State, have any effect upon the contract whilst it is in the hands of such parties or other non-residents of the State. . . . It is a law which interferes between the company and the bondholder, and under the pretence of levying a tax commands the company to withhold a portion of the stipulated interest and pay it over to the State. It is a law which thus impairs the obligation of the contract between the parties. The obligation of a contract depends upon its terms and the means which the law in existence at the time affords for its enforcement. A law which alters the terms of a contract by imposing new conditions, or dispensing with those expressed, is a law which impairs its obligation, for, as stated on another occasion, such a law relieves the parties from the moral duty of performing the original stipulations of the contract, and it prevents their legal

enforcement. The act of Pennsylvania of May 1, 1868, falls within this description. It directs the treasurer of every incorporated company to retain from the interest stipulated to its bondholders five per cent upon every dollar and pay it into the treasury of the commonwealth. It thus sanctions and commands a disregard of the express provisions of the contracts between the company and its creditors. It is only one of many cases where, under the name of taxation, an oppressive exaction is made without constitutional warrant, amounting to little less than an arbitrary seizure of private property."

If the present case involved any question as to the authority or duty of the railroad company to deduct anything from the interest paid on its scrip, bonds, or certificates of indebtedness, when held by non-residents of Pennsylvania, the case of *State Tax on Foreign-held Bonds* would be decisive against the State. But no such question is here presented. The statute of 1885 only applies to scrip, bonds, or certificates of indebtedness issued to and held by residents of Pennsylvania.

Counsel for the State insisted that the present case is controlled by *Bell's Gap Railroad Co.* v. *Pennsylvania*, 134 U. S. 232, reaffirmed in *Jennings* v. *Coal Ridge Improvement and Coal Co.*, 147 U. S. 147. It is only necessary to observe that the corporations which complained in those cases of the tax assessed, under a Pennsylvania statute, upon their loans held by residents of Pennsylvania, were Pennsylvania corporations. No question arose in either of those cases as to the authority of Pennsylvania to make a corporation of another State an assessor or collector of taxes assessed by or under the authority of Pennsylvania against residents of Pennsylvania. Nor does the case now before us involve any question as to the extent to which the State may tax property within its limits belonging to the railroad company.

The views we have expressed are sufficient for the disposition of the case, without considering other grounds upon which, it is contended, the judgment below was erroneous.

*The judgment of the Supreme Court of Pennsylvania is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.*

The case of NEW YORK, LAKE ERIE, AND WESTERN RAILROAD COMPANY v. COMMONWEALTH OF PENNSYLVANIA, No. 75, and that of NEW YORK, LAKE ERIE, AND WESTERN RAILROAD COMPANY v. COMMONWEALTH OF PENNSYLVANIA, No. 79, each upon writ of error to the Supreme Court of Pennsylvania, involved the same questions as were presented and have been determined in the above case. For the reasons stated, the judgment in No. 75 and the judgment in No. 79 are each reversed, and those cases are remanded for further proceedings not inconsistent with the opinion in case No. 591.