GROSS INCOME TAX DIVISION, STATE OF INDIANA *v.* QUICK.

[No. 28,368.    Filed April 29, 1948.    Rehearing Denied June 25, 1948.]

*Cleon H. Foust,* Attorney General, *John J. McShane, Eugene M. Fife, Jr.* and *Lloyd C. Hutchinson,* Deputy Attorneys General, for appellant.

*Hiram G. Miller,* of Rochester, and *Cole & Cole,* of Peru, for appellee.

O'MALLEY, J.—The appellee, a farmer living in Fulton County, Indiana, was, during the year 1940, buying and selling livestock. For that year he paid gross income on sales made in Indiana, but did not pay on sales of livestock shipped by truck or rail to commission merchants in Chicago, Illinois, Buffalo, New York, and Cincinnati and Cleveland, Ohio.

The Gross Income Tax Division made an additional assessment for the year named against the appellee, and in compliance with the law, the appellee paid the amount assessed and then brought this action to recover the same.

The stipulated facts show that in the year 1940, the appellee bought and raised large quantities of livestock, consisting of cattle and hogs, and from time to time shipped said livestock to the cities named above; that the shipments were to named commission merchants in each of the named cities, who received, cared for, sold and transferred the livestock at the stockyards where they were received; that the shipments were frequent, recurring and constant; that no prior orders for the sale of the livestock were received by the seller, appellee; that the livestock was shipped to the stockyards for sale and delivery to buyers who were unknown at the time of the shipment; and that such stockyards were operated in each of the cities to afford facilities to any member of the public for the selling or disposing of livestock under and pursuant to the Packers and Stockyards Act, 1921, as amended (42 Stat. at L. 159, ch. 64, U. S. C., Title 7, § 181, *et seq.,* F. C. A., Vol. 2, Title 7, § 181, *et seq.*)

The theory of the Gross Income Tax Division may be divided into four propositions, to-wit:

1. The transportation of the livestock ended prior to any offer for sale.

2. The sale of the livestock, made after transportation had ended, was a local sale.

3. The shipper being domiciled in Indiana is taxable upon his entire gross income.

4. The application of the Gross Income Tax Act to gross receipts of this type is not in violation of the Constitution of the state or nation.

Under the first proposition it is claimed that since there was no prior order the interstate commerce ended when the cattle and hogs reached the stockyards. The reasoning is that it was unnecessary to sell the livestock outside of Indiana; that both transportation across state lines and commerce are necessary to make interstate commerce. In support of the appellant's position dependence is placed on the cases of *Minnesota* v. *Blasius* (1933), 290 U. S. 1, 78 L. ed. 131, 54 S. Ct. 34, and *Independent Warehouses, Inc.* v. *Scheele* (1947), 331 U. S. 70, 91 L. ed. 1346, 67 S. Ct. 1062.

In the Blasius case, *supra,* the facts were that Blasius was a trader in livestock; that he bought livestock that had been shipped to the commission merchants by the owners; that his reason for making the purchase was that he intended to hold the cattle for resale; that as a result he placed them in pens leased by him and had them in his possession on May 1, 1929, which was the regular day for making assessments of property in Minnesota; and that the livestock was assessed and Blasius contended they were nonassessable because they were in interstate commerce. The trial court found that the situs of the cattle had come to rest and that the assessment was proper, and the Supreme Court

of Minnesota found that the cattle were in the center of a chain of commerce from west to east and from north to south and thus not taxable. The United States Supreme Court reversed the Supreme Court of Minnesota because the property situs had come to rest in the State of Minnesota before the assessment of the tax and the property was then held in the same way and subject to the same taxes as other property.

On page 10 of 290 U. S., page 136 of 78 L. ed., page 37 of 54 S. Ct., of the opinion in the above case, it is said:

"Where property has come to rest within a State, being held there at the pleasure of the owner, for disposal or use, so that he may dispose of it either within the State, or for shipment elsewhere, as his interest dictates, it is deemed to be a part of the general mass of property within the State and is thus subject to its taxing power."

The holding in the above case is based upon the proposition that the purpose for which the livestock had been introduced into the stream of commerce had been realized; and that since the purchaser intended to hold the property for an uncertain time and for dealing to be determined at some later date, the situs of the livestock became local and taxable.

The case of *Independent Warehouses, Inc.* v. *Scheele, supra,* involved coal shipped into New Jersey. The coal would be shipped to the Colberg storage yard, unloaded and stock piled. The freight was split but charged as if it were shipped direct to the ultimate destination by the shipper. Part of the freight was paid when it arrived at the stock pile and the balance when it arrived at its ultimate destination. The time during which the coal remained at Colberg was uncertain and

could be as much as two years. In that case the Supreme Court of the United States upheld the license tax levied by the local authorities on the ground that no one could tell the final destination of the coal when it reached Colberg unless the owner happened to have an order for it, and the duration of the cessation of transit was uncertain. Furthermore shipments went into a common pile and were withdrawn from a common pile.

In *Stafford* v. *Wallace* (1922), 258 U. S. 495, 66 L. ed. 735, 42 S. Ct. 397, 23 A. L. R. 229, it is stated that where there is a constantly flowing and recurring transportation of livestock to the stockyards, the various transactions which there occur cannot be separated from the movement to which they contribute; that the current of commerce would be obstructed if it were not aided by the commission merchants, the packers, the dealers and those to whom the property is sold in the form of livestock for feeding or as meat or meat products; and that sales are necessary to carry this current of commerce through the stockyards which form the throat of this vast current of business.

In the case of *Adams Mfg. Co.* v. *Storen* (1938), 304 U. S. 307, 82 L. ed. 1365, 58 S. Ct. 913, 117 A. L. R. 429, there were prior orders for the merchandise which was shipped in interstate commerce, but there is nothing in that case that would in any way limit the commerce to cases where prior orders are used.

The case of *Gwin, Etc., Inc.* v. *Henneford* (1939), 305 U. S. 434, 83 L. ed. 272, 59 S. Ct. 325, involved a gross receipts tax which was levied by the State of Washington upon the gross receipts of the firm of Gwin, White & Prince, Inc. This firm was engaged as agent in the sale of fruit for growers and seemed to

sell a great part of its merchandise either while it was in transit or while it was in storage at some point either within or without the State of Washington. It was held that it was unnecessary to determine what activities constituted transportation of the fruit in interstate commerce, since the commission was paid by the owner to the appellant for services in aid of both the shipment and the sale of merchandise in interstate commerce. The appellant was the commission merchant or agent, and the growers could not be taxed for the shipment and sale of fruit under the circumstances outlined, if the man or firm who did the work of selling and shipping and thus rendered the complete service as a whole was not also liable for payment of the tax on the charge made for such service, since both were domiciled in the same state.

It seems to us that the pertinent questions involved are answered first in *Swift and Company* v. *United States* (1905), 196 U. S. 375, 49 L. ed. 518, 25 S. Ct. 276, and again in the case of *Stafford* v. *Wallace, supra.*

The Supreme Court of the United States in the Swift case, *supra,* at pages 398, 399 of 196 U. S., page 525 of 49 L. ed., page 280 of 25 S. Ct., made the following statement:

"When cattle are sent for sale from a place in one State, with the expectation that they will end their transit, after purchase, in another, and when in effect they do so, with only the interruption necessary to find a purchaser at the stock yards, and when this is a typical, constantly recurring course, the current thus existing is a current of commerce among the States, and the purchase of the cattle is a part and incident of such commerce."

In the above case the court was trying to outline a course of conduct which was felt to be within the

domain of interstate commerce and subject to the authority of the national congress for its regulation.

In the instant case we have the constantly occurring and recurring shipments of cattle and hogs for sale in the stockyards for the cities heretofore named. The pattern of movement and purpose is similar to if not the same as that outlined in the Swift case, *supra*. We are constrained to hold that the sale of the cattle and hogs at the stockyards was but the ultimate end of the livestock insofar as this appellee was concerned, and the transportation and sale were both a part of the movement of the same into and through the stream of interstate commerce.

When it is determined that the commerce does not end until sale of the product, which has been introduced into the current of traffic between the states for the purpose of disposal by sale, we thereby answer the first two propositions which are asserted by the appellant.

The third and fourth propositions are such that they may be speedily answered. Having determined that the whole transaction is one of interstate commerce, we turn to § 6 of the Gross Income Tax Act of 1933, as amended in the Acts of 1945, ch. 143, § 2 (a), § 64-2606 (a), Burns' 1943 Replacement (Supp.), which exempts transactions in interstate commerce to the extent to which the state is prohibited, by the Constitution of the United States, from taxing the same. However, in *Gwin, Etc., Inc.* v. *Henneford, supra,* the Supreme Court of the United States, while considering a tax similar to the one here involved, made this pertinent comment (pages 438, 439 of 305 U. S., page 276 of 83 L. ed., page 327 of 59 S. Ct.) :

"But it is enough for present purposes that under the commerce clause, in the absence of Congressional action, state taxation, whatever its form,

is precluded if it discriminates against interstate commerce or undertakes to lay a privilege tax measured by gross receipts derived from activities in such commerce which extend beyond the territorial limits of the taxing state. Such a tax, at least when not apportioned to the activities carried on within the state, . . . ., 'burdens the commerce in the same manner and to the same extent as if the exaction were for the privilege of engaging in interstate commerce and would, if sustained, expose it to multiple tax burdens, each measured by the entire amount of the commerce, to which local commerce is not subject."

The commerce clause created an area of trade free from interference by the states and is a limitation on the power of the states, which precludes a state from taking any action which may be fairly taken to impede the free flow of trade and commerce between the states. *Freeman* v. *Hewit* (1947), 329 U. S. 249, 91 L. ed. 265, 67 S. Ct. 274, 329 U. S. 832, 91 L. ed. 705, 67 S. Ct. 497.

It seems to us that under the decisions of the Supreme Court of the United States, we are bound to hold that the tax under consideration is prohibited by the Constitution of the United States as the Commerce Clause, Article 1, § 8, thereof, is interpreted by the Supreme Court of the United States. In view of the holdings in the above authorities, the domicil of the appellee is not material and since the tax is prohibited by the Constitution of the United States, the fact that it is not in violation of the Constitution of Indiana cannot create a right to tax which is denied by the higher law of the Federal Government and we are forced to the conclusion that the third and fourth propositions asserted by the appellant are untenable.

The judgment of the lower court is affirmed.

Emmert, C. J., not participating.

Note.—Reported in 78 N. E. 2d 871.