DEPARTMENT OF FINANCIAL INSTITUTIONS ET AL. *v.* GENERAL FINANCE CORPORATION

[No. 28,397. Filed June 9, 1949.]

374

· *J. Emmett McManamon* and *Cleon H. Foust,* Attorneys General, *Frank E. Coughlin,* First Deputy Attorney General, and *John H. Fetterhoff,* Deputy Attorney General, for appellant.

*Leo M. Gardner, Alan W. Boyd, Charles M. Wells,* and *Jerry P. Belknap;* and *Barnes, Hickam, Pantzer & Boyd* (of counsel), all of Indianapolis, for appellee.

EMMERT, J.—This is an appeal from a declaratory judgment of the trial court which adjudicated that § 9 of the Indiana Retail Instalment Sales Act, as amended by Ch. 238 of the 1947 Acts (§ 58-909, Burns' 1943 Replacement [1947 Supp.]), "is unconstitutional and void in that it deprives plaintiff [appellee General Finance Corporation] of liberty and property without due process of law and unlawfully burdens interstate commerce." The evidence consisted of stipulations, documentary evidence, and the testimony of three witnesses, and there is no dispute as to the facts, but only as to the law as applied to the facts.

The complaint was for a declaratory judgment and injunction. The evidence reveals that the appellee is a corporation organized under the laws of the State of Michigan, with its principal office at Detroit, and it has been duly admitted, qualified and authorized to transact business as a foreign corporation in the State of Indiana. Since February 26, 1944, it has been licensed by the Department of Financial Institutions to purchase retail instalment contracts as defined in the Retail Instalment Sales Act (§ 58-901 et seq., Burns' 1943 Replacement; ch. 231, Acts of 1935), and on June 26, 1946, it was again licensed "to purchase retail instalment contracts from retail sellers and/or to loan money to retail sellers on the security of retail instalment contracts . . . from July 1, 1946, until such license and the authorization thereunder is surrendered, revoked or suspended . . . ." The corporation is licensed to and does business in approximately eighteen states and maintains offices in Chicago. Its net worth is $9,000,000 with a borrowing capacity of three times its net worth, or $27,000,000. Its annual gross business throughout the United States totals $400,000,000 of which the annual volume of business in Indiana is

$10,000,000. It maintains an Indiana office where it buys retail instalment sales contracts.

At the time the action was commenced it had an agreement with the Harris Trust and Savings Bank of Chicago, Illinois, and the Mercantile-Commerce Bank and Trust Company of St. Louis, Missouri, to sell and assign to them without recourse retail instalment sales contracts purchased in Indiana. The Indiana contracts were transmitted to the corporation's Chicago office for the assignment and delivery to the Harris Trust and Savings Bank, which also serviced the purchases made by the Mercantile-Commerce Bank and Trust Company of St. Louis. These two banks were the only institutions available to the corporation for sale without recourse of instalment sales contracts in the large volume required by it.

The corporation also had a standing arrangement with the First National Bank of Chicago, Illinois, to pledge large amounts of such contracts with it as trustee for approximately seventy-five banks located in approximately twenty states, only one of which is licensed under the Indiana Retail Instalment Sales Act, as security for separate loans made to the appellee by such banks.

It was stipulated that because of the large quantity of credit and working capital the corporation was required to employ in its business, its business in Indiana would be seriously impaired without being able to assign or pledge the contracts in which it dealt. None of the out of state banks has ever engaged in the business of purchasing retail contracts from retail sellers, or making loans to retail sellers in Indiana on the security of such contracts, and prior to the bringing of this action each of the three named banks advised the appellee it was unwilling to become a licensee under

the Indiana Act. However, under protest the Harris Trust and Savings Bank of Chicago and the Mercantile-Commerce Bank and Trust Company of St. Louis did obtain a license from the Department of Financial Institutions in order to protect the validity of the contracts pending the outcome of this litigation. The First National Bank of Chicago never obtained such a license.

At the time this action for declaratory judgment was commenced, Ch. 238 of the 1947 Acts, which amended § 9 of the Act, had not become effective, although it had been approved by the Governor March 12, 1947. It contained no emergency clause, and the exact time it would become effective was uncertain. It did become effective on August 20, 1947, the day the evidence was concluded upon the trial.

A declaratory judgment action will lie to determine the rights under a statute even though the act is not yet in effect. Anderson, *Declaratory Judgments,* p. 192, § 68; 16 Am. Jur. 301, § 27. The amendment was certain to take effect, and when it did become effective it would substantially impair the valuable property rights of the appellee. We cannot presume that, in the absence of adjudication declaring its invalidity, the Department of Financial Institutions would not take steps to enforce its provisions. It was stipulated that there was "a good faith controversy" existing between the appellee and appellants as to the validity of § 9 of the Act as amended. The complaint alleged the appellants were contending that § 9 as amended was "in all respects valid" and will "render unlawful the sales and pledges of the contracts to persons, firms and corporations either within or without the state of Indiana not licensed under the act" and that "a good faith controversy exists between the plain-

tiff and defendants as to the interpretation and validity" of said section. The finding of the trial court was that the facts alleged in the complaint were true. The appellee had a present substantial interest in the relief sought, and there was in existence a real and material controversy which should be decided in order to safeguard the appellee's rights. *Zoercher* v. *Agler* (1930), 202 Ind. 214, 172 N. E. 186, 907, 70 A. L. R. 1232. The fact that the court did not grant the injunction gives no cause for complaint to the appellants. The judgment decided the issues in controversy. "The idea that it is necessary for one branch of the government forcibly to restrain or punish another branch or instrument of the government, in order to achieve respect for the declared law, is anomalous. In a recent case [*Tirrell* v. *Johnston, Attorney-General* (1934), 86 N. H. 530, 171 Atl. 641, 642], Chief Justice Peaslee for the New Hampshire Supreme Court in refusing to enjoin the attorney-general from criminally prosecuting the plaintiff for purported violation of a tax statute, but in approving the substitution of a prayer for a declaratory judgment, remarked:

> " 'When the law is settled it will be obeyed. It is therefore immaterial whether the proper proceeding is an application for a restraining order or a petition for a declaratory judgment. A final interpretation of the law in either form of proceeding would be binding upon these parties.'

The simplest way is the best way to bring to judicial determination the challenged validity of governmental action allegedly violating individual rights; and experience has shown that the declaratory judgment serves that purpose admirably . . ." Borchard, *Declaratory Judgments* 967 (2d Ed.).

382

The fact that the appellee had a license under the Act does not estop it from attacking the constitutionality of the amendment. The enactment constituted an invasion of appellee's liberty and property rights and there was in substance a threat of enforcement of the unconstitutional provisions. *Euclid* v. *Ambler Realty Co.* (1926), 272 U. S. 365, 71 L. Ed. 303, 47 S. Ct. 114, 54 A. L. R. 1016; *Savage* v. *Jones* (1912), 225 U. S. 501, 56 L. Ed. 1182, 32 S. Ct. 715; *Power Mfg. Co.* v. *Saunders* (1927), 274 U. S. 490, 71 L. Ed. 1165, 47 S. Ct. 678; *Commonwealth of Pennsylvania* v. *State of West Virginia* (1923), 262 U. S. 553, 67 L. Ed. 1117, 43 S. Ct. 658, 32 A. L. R. 300. The penalties for noncompliance were severe, since if the provisions were enforced no suit could be brought upon the contract by any assignee or purchaser under § 9, and a wilful violation of the provisions of the Act under § 29 (§ 58-929, Burns' 1943 Replacement) was made a penal offense, punishable by fine of not more than $1,000 or imprisonment of not more than one year, or both. Compliance with such coercive provisions does not constitute a waiver of the right to contest the constitutionality of the Act. 11 Am. Jur. 771, § 124; *Union Pacific R. Co.* v. *Public Service Com. of Missouri* (1918), 248 U. S. 67, 63 L. Ed. 131, 39 S. Ct. 24; *Cargill Co.* v. *State of Minnesota* (1901), 180 U. S. 452, 45 L. Ed. 619, 21 S. Ct. 423.

An examination of all the provisions of the Retail Instalment Sales Act (Ch. 231 of the 1935 Acts, § 58-901 *et seq.*, Burns' 1943 Replacement) reveals that, among other objects, it seeks to prevent fraud and promote competition among licensees who might purchase such contracts from retail sellers. The prevention of fraud is a legitimate exercise of the police powers of the state. *Dent* v. *State of W. Va.*

(1889), 129 U. S. 114, 32 L. Ed. 623, 9 S. Ct. 231; *Savage* v. *Jones* (1912), 225 U. S. 501, 56 L. Ed. 1182, 32 S. Ct. 715, *supra;* 11 Am. Jur. 1027, § 273; 12 C. J. 920, § 429; 16 C. J. S. 555, § 187; *Hammer* v. *State* (1909), 173 Ind. 199, 89 N. E. 850, 140 Am. St. Rep. 248, 24 L. R. A. (N. S.) 795, 21 Ann. Cas. 1034; *State* v. *Martin* (1923), 193 Ind. 120, 139 N. E. 282, 26 A. L. R. 1386. The promotion of competition by prohibiting monopolistic practices is likewise a valid exercise of the police power. *German Alliance Ins. Co.* v. *Hale* (1911), 219 U. S. 307, 55 L. Ed. 229, 31 S. Ct. 246; *Knight & Jillson Co.* v. *Miller* (1909), 172 Ind. 27, 87 N. E. 823; 36 Am. Jur. 595, § 120; 12 C. J. 927, § 438; 41 C. J. 118, 119, § 81. See also *United States* v. *General Motors Corp.* (1941), 121 F. 2d 376.

But it is not every exercise of police power by the state which is valid either under the Commerce Clause or the due process clause of the Federal Constitution or under §§ 1 and 23 of Article 1 of the Constitution of Indiana, nor does the determination by the legislative department as to what is a proper exercise of police power prevent a review of the question by the courts. *Baldwin* v. *Seelig* (1935), 294 U. S. 511, 79 L. Ed. 1032, 55 S. Ct. 497; *Kansas City S. R. Co.* v. *Kaw Valley Drainage Dist.* (1914), 233 U. S. 75, 58 L. Ed. 857, 34 S. Ct. 564; *Morgan* v. *Commonwealth of Virginia* (1946), 328 U. S. 373, 90 L. Ed. 1317, 66 S. Ct. 1050, 165 A. L. R. 574; *Southern Pacific Co.* v. *Arizona* (1945), 325 U. S. 761, 89 L. Ed. 1915, 65 S. Ct. 1515; *Truax* v. *Raich* (1915), 239 U. S. 33, 60 L. Ed. 131, 36 S. Ct. 7; *Buchanan* v. *Warley* (1917), 245 U. S. 60, 62 L. Ed. 149, 38 S. Ct. 16; *Department of Ins.* v. *Schoonover* (1947), 225 Ind. 187, 72 N. E. 2d 747; *State Bd. of Barber Examiners* v. *Cloud* (1942), 220 Ind. 552, 44 N. E. 2d 972; *Weisenberger* v. *State*

(1931), 202 Ind. 424, 175 N. E. 238; *Blue V. Beach* (1900), 155 Ind. 121, 56 N. E. 89, 50 L. R. A. 64, 80 Am. St. Rep. 195. The trial court in reviewing such legislative determination found that § 9 as amended did deprive the appellee of liberty and property without due process of law, and was an unlawful burden upon interstate commerce. There are no cross-errors assigned, so the constitutional issues presented on appeal are limited to due process and interstate commerce.

There is nothing immoral, noxious or unlawful *per se* in the execution of retail instalment sales contracts, nor in engaging in the business of selling goods by ▆▆▆ such method, nor in selling, buying, or pledging such contracts. "Property is more than the mere thing which a person owns. It is elementary that it includes the right to acquire, use, and dispose of it. The Constitution protects these essential attributes of property. *Holden* v. *Hardy*, 169 U. S. 366, 391, 42 L. Ed. 780, 790, 18 S. Ct. 383. Property consists of the free use, enjoyment, and disposal of a person's acquisitions without control or diminution save by the law of the land. 1 Cooley's *Blackstone's Commentaries* 127." *Buchanan* v. *Warley* (1917), 245 U. S. 69, 74, 62 L. Ed. 150, 161, 38 S. Ct. 16, *supra*. "Valid contracts are property, whether the obligor be a private individual, a municipality, a State or the United States." *Lynch* v. *United States* (1934), 292 U. S. 571, 579, 78 L. Ed. 1434, 1440, 54 S. Ct. 840.

Section 9 of the Act as amended by Chapter 238 of the 1947 Acts (§ 58-909, Burns' 1943 Replacement [1947 Supp.]), in part provides, "No retail instalment contract shall be sold, assigned or transferred to any person other than a licensee under this act or a retail seller who was a party to the retail instalment sale from which such retail instalment contract originated

and no suit shall be brought thereon by any assignee or purchaser in violation of this provision."

Section 11 of the Act (§ 58-911, Burns' 1943 Replacement), prohibits persons from purchasing retail instalment contracts from retail sellers, or, unless a bank or trust company, from making loans to a retail seller doing business in this state on the security of retail instalment contracts, unless the Department of Financial Institutions has licensed such business activities. Before the amendment of § 9, the appellee was free to sell or pledge such contracts in other states.[1]

The prohibitions in the present law prevent the appellee from assigning or pledging its own property in another state. The prohibition of a right to contract within another state concerning the property of a person within the state, is a denial of due process of law. *Allgeyer* v. *Louisiana* (1897), 165 U. S. 578, 591, 592, 41 L. Ed. 832, 836, 17 S. Ct. 427, 432. In this case the State of Louisiana sought to prohibit making an insurance contract in the State of New York on property located in Louisiana. The United States Supreme Court said:

"In the privilege of pursuing an ordinary calling or trade and of acquiring, holding, and selling property must be embraced the right to make all proper contracts in relation thereto, and although it may be conceded that this right to contract in relation to persons or property or to do business within the

---

[1] Section 9, before amendment, provided: "Except as in this section otherwise provided, every retail instalment contract shall be assignable and the interest therein transferable to any person or persons. No retail seller may sell, assign and transfer any retail instalment contract to any person other than a licensee under this act. Any retail instalment contract which is or has been owned by a licensee may be enforced and collected by the holder thereof according to its lawful terms." § 58-909, Burns' 1943 Replacement, (Acts 1935), ch. 231, § 9, p. 1206).

jurisdiction of the state may be regulated and sometimes prohibited when the contracts or business conflict with the policy of the state as contained in the statutes, yet the power does not and cannot extend to prohibiting the citizen from making contracts of the nature involved in this case outside of the limits and jurisdiction of the state, and which are also to be performed outside of such jurisdiction; nor can the state legally prohibit its citizens from doing such an act as writing this letter of notification, even though the property which is the subject of the insurance may at the time when such insurance attaches be within the limits of the state. The mere fact that a citizen may be within the limits of a particular state does not prevent his making a contract outside its limits while he himself remains within it, *Milliken* v. *Pratt,* 125 Mass. 374 [28 Am. Rep. 241]; *Tildon* v. *Blair,* 88 U. S. 21 Wall. 241 [22:632]. . ."

No state by legislation may project its powers and authority beyond its own borders. *New York, L. E. & W. R. Co.* v. *Commonwealth of Pennsylvania* (1894), 153 U. S. 628, 38 L. Ed. 846, 14 S. Ct. 952; *Fidelity & Deposit Co.* v. *Tafoya* (1926), 270 U. S. 426, 70 L. Ed. 664, 46 S. Ct. 331; *Baldwin* v. *Seelig* (1935), 294 U. S. 511, 79 L. Ed. 1032, 55 S. Ct. 497, *supra; McLeod* v. *Dilworth Co.* (1944), 322 U. S. 327, 88 L. Ed. 1304, 64 S. Ct. 1023; *Pennoyer* v. *Neff* (1878), 95 U. S. 714, 24 L. Ed. 565; *Allgeyer* v. *Louisiana* (1897), 165 U. S. 578, 41 L. Ed. 832, 17 S. Ct. 427, *supra.* The facts in this appeal involve more than an incidental extraterritorial effect on contracts to be performed within Indiana. Section 9 of the Act as applied to out of state assignments and pledges is an unreasonable and arbitrary attempt to extend jurisdiction beyond the state under the police power in order to remedy evils which would be prevented adequately under the existing rights of regulation, inspection and report, or, if needed, by other legislative provisions which would have no extra-

territorial force. It logically follows that amended .§ 9 does deprive the appellee of liberty and property without due process of law under the Fourteenth Amendment.

In considering what is interstate commerce the courts are not bound by any frozen concept. As stated by Mr. Justice Holmes in *Swift & Co.* v. *United States* (1905), 196 U. S. 375, 398, 49 L. Ed. 518, 525, 25 S. Ct. 276, ". . . commerce among the states is not a technical legal conception, but a practical one, drawn from the course of business." Intangibles, such as contracts, may be instruments of interstate commerce. *United States* v. *Southeastern Underwriters Assn.* (1944), 322 U. S. 533, 88 L. Ed. 1440, 64 S. Ct. 1162; *United States* v. *General Motors Corp.* (1941), 121 F. 2d 376. The fact that the appellee in its regular course of business transmitted the Indiana contracts to its Chicago office for delivery to the Chicago banks did not change the interstate character of the commerce. *Binderup* v. *Pathe Exch.* (1923); 263 U. S. 291, 68 L. Ed. 308, 44 S. Ct. 96; *Swift & Co.* v. *United States, supra; Gross Income Tax Division* v. *Quick* (1948), 226 Ind. 338, 78 N. E. 2d 871; *Gross Income Tax Division* v. *Strauss* (1948), 226 Ind. 329, 79 N. E. 2d 103. The Commerce Clause, "by its own force created an area of trade free from interference by the States. . . A State is also precluded from taking any action which may fairly be deemed to have the effect of impeding the free flow of trade between States." *Freeman* v. *Hewit* (1946), 329 U. S. 249, 252, 91 L. Ed. 265, 271, 272, 67 S. Ct. 274, 276. Even the police power of the state may not be used to place substantial or undue burdens, either direct or indirect, upon interstate commerce. *Southern Pacific Co.* v. *Arizona* (1945), 325 U. S. 761, 89 L. Ed. 1915, 65 S. Ct. 1515, *Supra; Morgan* v. *Com-*

*monwealth of Virginia* (1946), 328 U. S. 373, 90 L. Ed. 1317, 66 S. Ct. 1050, 165 A. L. R. 574, *supra; Baldwin* v. *Seelig* (1935), 294 U. S. 511, 79 L. Ed. 1032, 55 S. Ct. 497, *supra; Kansas City S. R. Co.* v. *Kaw Valley Drainage Dist.* (1914), 233 U. S. 75, 58 L. Ed. 857, 34 S. Ct. 564, *supra; Furst* v. *Brewster* (1931), 282 U. S. 493, 75 L. Ed. 478, 51 S. Ct. 295.

The general purposes of the Act in preventing fraud and monopolies must be accomplished by reasonable means, and the provisions of the Act, as far as intrastate commerce extended, for the regulation and examination of the original licensees who purchased instalment contracts from the retail sellers were valid. But it is quite different for the legislature to say that after a licensee has purchased a contract pursuant to his license, which gives the Department of Financial Institutions the right to inspect his required records, and obtain reports to insure compliance with the Act, that this licensee then is prohibited from selling or pledging his property to any person except another licensee. The facts in this case show that the market for assignment without recourse and pledges in large volume was restricted to out of state purchasers and pledgees, who asserted Indiana has no right to regulate their businesses. It seems to us that the purposes of the Act could be fully accomplished without any attempt to extend the police power of Indiana into other states. The inevitable result of amended § 9, if it should be held valid as to interstate commerce, would be to restrict the market for contract sales or credit to Indiana in direct violation of the Commerce Clause, which was intended by the Forefathers to prohibit such clogging of the stream of interstate commerce.                    Judgment affirmed.

NOTE.—Reported in 86 N. E. 2d 444.