## FRANÇOIS GOUBEAU *v.* THE NEW ORLEANS AND NASHVILLE RAIL ROAD COMPANY.

Where the return on a *fi. fa.* states, that it was levied on the proceeds of the sale of certain slaves seized and advertised to be sold at a future day, at the suit of another party, the plaintiff in the execution will acquire no privilege entitling him to be paid by preference, out of the proceeds. *Per Curiam.* The slaves themselves were not seized, and the proceeds of the sale were not in existence at the time, and could not, therefore, be taken possession of. To entitle a seizing creditor to the privilege conferred by arts. 722, 723 of the Code of Practice, the thing seized must be taken possession of by the officer ; otherwise, there is no seizure.

APPEAL from the District Court of the First District, *Buchanan*, J.

*Schmidt*, for the plaintiff.

*Preston*, for the appellants.

SIMON, J. By virtue of a judgment obtained by the plaintiff against the defendants, an execution was sued out, which he caused to be levied on the 20th of July, 1842, as stated in the sheriff's return, " *on the proceeds of the sale of five slaves, which were seized and advertised to be sold on the 20th of August,* 1842, *with other property of the defendants, at the suit of the State of Louisiana and which slaves were sold on the said day.*" On the 30th of the same month, Painter, Richardson, Layton's executors and Gosselin, levied on the same proceeds, by virtue of executions issued subsequent to that of the plaintiff, and on the third of August, the said individuals caused their judgments to be recorded at the mortgage office, thereby acquiring a judicial mortgage on the property seized, which mortgage is recited in the certificate of mortgages produced and read by the Sheriff on the day of the sale.

The sale, under the seizure of. the State, was effected on the 20th of August, and afterwards, the Sheriff having called upon the mortgage creditors to show cause why their mortgages, subsequent to that of the State, should not be cancelled, it was determined by this court, that the State had neither mortgage, privilege, nor lien on the five slaves, and that the mortgages of Painter, Richardson, Gosselin and Layton's executors had a prefer-

ence on the proceeds thereof, by virtue of their judicial mortgages, over the claim of the State. See case of *The State* v. *The New Orleans and Nashville Rail Road Company*, 4 Robinson, 231. The plaintiff in this suit was no party to the said controversy.

The present controversy grows out of a rule taken by the plaintiff on John L. Thielen, late Sheriff of the District Court, who held in his hands the funds produced by the sale of the five slaves, to show cause why he should not pay and satisfy the amount of the plaintiff's judgment, to wit, the sum of $2952, with interest and costs, according to the *fi. fa.*, by virture of which said slaves were seized, on the 20th of July, 1842.

Thielen answered to the rule, and after stating the extent of the pretensions set up to the said proceeds by the State and Layton's executors, Painter, Richardson, and Gosselin, prays that they be made parties to the rule; and that, after hearing all the parties interested, the court make such order as may relieve him, the Sheriff, from all responsibility in the premises.

This was done ; and after issue joined by those persons and by the State, denying that the plaintiff has any claim on the funds in dispute, and after a full investigation of the rights set up by all the parties respectively, the court, *a qua*, decided that Goubeau was entitled to be paid in preference to the opponents, and from this judgment, Layton's executors, Painter, Richardson and Gosselin took the present appeal.

The only question presented to our solution in this case is, whether the appellee by his seizure of the proceeds of the sale of five slaves, which had been previously seized by the Sheriff at the suit of the State, and which were to be sold at a future period, acquired any such privilege upon said proceeds, as to give him a right to be paid out of the proceeds in preference to the appellants, who, previous to the sale, had acquired a judicial mortgage on the property ?

To this it is answered by the appellants' counsel, that the appellee acquired no privilege *on the proceeds of said slaves*, because *he did not seize them*, but only any proceeds that might be made under the seizure by the State. Hence, it is insisted, that Goubeau acquired nothing previous to the recording of the ap-

pellants' judgment, as the proceeds were not then in existence, as the Sheriff had nothing in his hands for the benefit of Goubeau, and as, at the time that his seizure of the proceeds could have been effectually made, to wit, after the sale of the slaves, said slaves were subject to the appellants' judicial mortgage.

The law relied on by the appellee's counsel, art. 722, and 723, of the Code of Practice, provides, that " the creditor, *by the mere act of seizure,* is invested with a privilege on the property thus seized, which entitles him to a preference over other creditors ; and when several successive seizures are made of the same property, the creditors making them, are entitled to a preference according to the order of their seizures." Thus, it is clear that, if the Sheriff's proceeding in Goubeau's case, was *a seizure* in the true sense of the law, he must be entitled to his privilege, and be paid by preference over the subsequent seizing creditors, and even over the judicial mortgages subsequently acquired, as the appellants could not, by the subsequent recording of their judgments, in any manner defeat or affect the right previously acquired by the appellee.

Now, what is a seizure ? Bouvier's Dict. vol. 2, says : " *seizure* is defined to be *the act of taking possession of the property* of a person condemned by the judgment of a competent tribunal, to pay a certain sum of money, by a Sheriff or other officer, lawfully authorized thereto by virtue of an execution, for the purpose of having such property sold according to law, to satisfy the judgment." Dalloz, Verbo *Saisie, Exécution,* says : *La saisie, exécution, ou mobilière, ou générale, est celle par laquelle un créancier met* sous la main de la justice *les meubles saississables de son débiteur, afin de les faire vendre pour obtenir son payement sur le prix.*" And further, Verbo *Saisie Immobilière,* he proceeds ; " *Le but de l' une et de l' autre* (both kinds of seizures) *est de* mettre les biens du débiteur entre les mains de la justice, *pour les faire vendre, et payer les créanciers sur le prix.*" There must be, therefore, an act of taking possession of the property ; the thing seized must be put in the hands of the officer ; otherwise, the seizure is incomplete, or rather, there is no seizure. So, by the 659th art. of the Code of Practice, when the objects seized consist in money, &c., or slaves, the

Sheriff *should put them in a place of safety*. So, by art. 661, until the sale, the Sheriff is authorized to make such disbursements as are necessary *for the preservation of the property seized ;* and by art. 662, if the objects seized be animals or slaves, "he cannot lease or hire them out, unless authorized by the court, with the consent of both parties." So, by art. 667, and the following, the Sheriff must give notice to the debtor of the property seized from him; must have said property advertised for sale ; must have it estimated by experts, after due notice to the debtor; and finally, the rights and claims which the debtor has to the thing seized, are transferred to the purchaser by the mere effect of the adjudication, and said purchaser can take immediate possession of the property thus adjudicated. See the case of *Winn* v. *Elgee, ante,* 100.

From all the different provisions of our laws above referred to, can it be controverted that, in order to have them carried into effect, the Sheriff must necessarily take the property seized into his possession? This is of the essence of the seizure. It cannot exist without such possession. The property would not be seized as the law directs ; and we doubt very much, if a defendant in execution should sell a slave against which a Sheriff had an execution, when he had left the slave in the hands of the defendant, without having previously taken the slave in his own possession, whether such sale could be successfully attacked and invalidated. The five slaves, upon the proceeds of the sale of whom the appellee claims to exercise his privilege, never were seized for his benefit. They were *clearly subject to the* appellants' judicial mortgage on the day of the sale ; and this mortgage must, in our opinion, have its full effect upon the slaves, or upon their proceeds, to the exclusion of the privilege set up by Goubeau, the appellee.

The same reasoning applies to the seizure of the proceeds of the sale, upon which the privilege is sought to be exercised. Those proceeds were not in existence at the time of the alleged seizure, and could not, therefore, be taken possession of by the Sheriff. The seizure of such proceeds was merely prospective in its operation, and could have no effect until they came to the hands, or possession of the officer. But suppose the sale never to have taken place—suppose the debtor, on being notified of the seizure

made by the State, had paid the debt, would the appellee have acquired any right under his seizure? Certainly not. His rights, if he had any, would have vanished; and he would have been obliged to renew his seizure upon the slaves themselves, and if so, to seize and sell them subject to the judicial mortgage previously acquired by the appellants.

It is, therefore, ordered, that the judgment of the District Court, be annulled, and reversed; and that the rule obtained by the plaintiff and appellee in the court below, be discharged, with the costs in both courts.