## BUCK *v.* BEACH, TREASURER OF TIPPECANOE COUNTY, INDIANA.

ERROR TO THE SUPREME COURT OF THE STATE OF INDIANA.

No. 14.　Argued March 22, 1907.—Decided May 27, 1907.

The old rule of *mobilia sequuntur personam* has been modified so that the owner of personal property may be taxed on its account at its *situs* although not his residence, or domicil; but the mere presence of notes within a State which is not the residence or domicil of the owner does not bring the debts of which they are the written evidence within the taxing jurisdiction of that State, and a tax thereon by that State is illegal and void under the due process clause of the Fourteenth Amendment.

An attempt to escape proper taxation in one State on the debt represented by a note does not confer jurisdiction on another State, not the residence or domicil of the owner, to tax the note on account of its mere presence therein.

Mortgage notes made and payable in Ohio and secured by mortgages on property in that State, the owner whereof resides in New York, are not taxable in Indiana because they are therein for safe keeping.

JUDGMENT against the plaintiff in error (who was defendant below) was recovered in a state Circuit Court in Indiana, which was affirmed by the Supreme Court of the State (164 Indiana, 37), and the plaintiff in error brings the case here to review that judgment. The predecessor of the defendant in error, being at the time treasurer of Tippecanoe County, in the State of Indiana, brought this action in 1897 against the plaintiff in error to subject funds in his hands to the payment of taxes alleged to be due from the estate of one Job M. Nash, deceased, which taxes had been assessed in above county and State in 1894, after the death of Nash, on personal property of the deceased that

had been omitted from the tax list in his lifetime, during the years 1881 to 1893, both inclusive.

The point in dispute between the parties relates to the assessment for omitted property on what are called the "Ohio notes," the plaintiff in error insisting that such assessment was illegal as beyond the jurisdiction of the State to impose.

The material facts are not really in dispute. It appears that Nash died in 1893, at that time, and for more than twenty years prior thereto, a resident of the city and State of New York. He left a will which was admitted to probate in Hamilton County, Ohio, and his executors qualified there. They thereafter refused to pay the tax imposed upon the Ohio notes in Indiana. By the terms of the will a trust was created, and part of the personal property constituting such trust (more than enough to pay the taxes in dispute) was turned over to James Buck, plaintiff in error and one of the two trustees named in the will. He resided in Lafayette, in the State of Indiana, and the other trustee resided in Cincinnati, in the State of Ohio. From this fund, in the hands of Buck, the defendant in error asked to have the taxes paid which had been assessed, as above stated, and which he claimed were due the State. This was refused, and this action was thereupon commenced.

A former action had been brought by the trustees for relief by injunction against the predecessor of the defendant in error to enjoin him from seizing upon or interfering with the trust fund for the payment of the taxes in dispute, and in that action the trustees had been unsuccessful. *Buck* v. *Miller.* 147 Indiana, 586, decided in 1896.

The amount assessed on the estate of decedent upon the "Ohio notes" from 1884 to 1893, on account of omitted assessments during those years, aside from the penalties for non-payment, was $36,357.71.

During the above-mentioned years, while the decedent was, as stated, a resident of the State of New York, he had a large sum of money invested in the States of Ohio and Indiana, approximating $750,000. The money loaned by him in Ohio

was evidenced by Ohio notes,. made by the borrowers, who were residents of Ohio, the payment of the money borrowed being secured by mortgages on lands situated in Ohio. The moneys loaned in Ohio were loaned through an agent of Mr. Nash, residing in Cincinnati. The notes were dated and payable in Cincinnati, to the order of Mr. Nash, but were not endorsed by him, and all renewals and payments on account of them were made to his agent in Cincinnati. All moneys paid upon or by reason of these notes were deposited in a bank in Cincinnati to the credit of Mr. Nash, and no part thereof was sent to Indiana. The Cincinnati agent commenced loaning decedent's money about 1860, and, upon the removal of decedent to New York in 1870, and until his death, in 1893, the agent made investments on decedent's behalf in Ohio, collected the principal and interest upon his mortgage loans and had general charge of his financial interests in that State.

James Buck was the agent of decedent at Lafayette, in the State of Indiana,. for many years preceding the death of Mr. Nash. The Ohio notes were sent to him from Cincinnati by the agent there, during the years in question, together with the mortgages securing the payment of the notes, and they were kept in a safe at Lafayette, Indiana, by Mr. Buck, but no business was transacted in regard to them nor any use made of them in Indiana, otherwise than that a short time before the interest on or principal of the notes became due they were sent to the Ohio agent to have the interest payments made to him endorsed upon them, or to be delivered up if the principal were paid.

Nothing else was done in Indiana in regard to the notes, except that a few days prior to the first day of April in each year (which is the day upon which assessments for taxes are, by law, made in the State of Indiana). Mr. Buck sent the notes and mortgages to the Ohio agent, and a few days subsequent to that day in each year the same were returned by the Ohio agent to Mr. Buck, who retained them in his possession.

When the Ohio notes and mortgages were sent from Cincin-

nati to Mr. Buck by the Ohio agent, Mr. Buck made a record of
their receipt in a book kept by him for that purpose, showing
the dates and amounts of the notes and when due, and when-
ever payment or renewal of said notes was reported by the
Ohio agent to the Indiana agent, he made entries of the facts
in the register kept by him.

Mr. Buck also had possession of the notes and mortgages
given to Mr. Nash for moneys loaned in the State of Indiana,
and such moneys were invested and reinvested in that State
during these years, and the taxes thereon were duly paid.

Mr. Buck transacted no business directly with the makers
of the Ohio notes or mortgages but, as stated, sent the notes
to the Ohio agent for any business to be done in regard to them.

During Mr. Buck's agency money was sometimes sent to him
at Lafayette from Cincinnati to be invested, which money was
placed on deposit in the bank in Indiana and loaned for Mr.
Nash. Such moneys have nothing to do with the "Ohio notes"
in issue in this action.

During these years, at least from 1886, Mr. Buck was author-
ized by virtue of a power of attorney from Mr. Nash to satisfy
when due and when the money was paid all notes and mort-
gages, but so far as the Ohio notes and mortgages were con-
cerned he never assumed to satisfy any of them or receive pay-
ment for the same. That was all done by the Ohio agent at
Cincinnati.

*Mr. W. H. H. Miller* and *Mr. Byron W. Langdon* for plaintiff
in error:

The presence of the Ohio notes in Indiana did not constitute
taxable property in that State.

. The powers of taxation of a State are uncontrollable except
as restrained by the provisions of the Federal Constitution.
*McCullough* v. *State of Maryland,* 4 Wheat. 316, 418, 428, 429.

These powers can only be exercised over persons, property
and business within the jurisdiction of the State. *State Tax
on Foreign-Held Bonds,* 15 Wall. 300, 319; *Dewey* v. *Des Moines,*

173 U. S. 193, 204; *Louisville & J. Ferry Co.* v. *Kentucky,* 188 U. S. 385, 396, 397, 398.

The powers of taxation are solely vested in the law-making department of the State. Sec. 1, Art. 10, Const. Indiana.

There must be statutory warrant for taxation. *New Orleans* v. *Stempel,* 175 U. S. 309, 312.

There was no statute of Indiana concerning the taxation of the transfer of property by death or otherwise; or, the taxing of title papers or written instruments themselves, apart and distinguished from the property interests or rights to which they related, or by which they were evidenced; or, on account of the business of loaning, collecting, reloaning or investment of money in the State.

A debt is not a *corpus* capable of a local position, but purely a *jus incorporale,* and contracts respecting personal property and debts are now universally treated as having no *situs* or locality, and they follow the person of the owner in point of right, although the remedy on them must be according to the law of the place where they are sought to be enforced. Story on Conflict of Laws, §§ 362, 399; *Kirtland* v. *Hotchkiss,* 100 U. S. 491.

The obligations of the borrowers of Nash's money were to return it to him, and they were personal to them, because no one else received the loans, and also on account of their express promise to pay.

These promises or obligations being inseparable from the borrowers, they were intangible and were where the borrowers were, and their permanent *siti* were at the domicil of the borrowers in Ohio. The *situs* of the mortgaged lands was likewise in Ohio, and, therefore, not taxable in Indiana.

In case of a non-resident the money due him, in the taxing State, is the only subject of taxation, and not his paper evidence. *Catlin* v. *Hull,* 21 Vermont, 152; *Board* v. *Davenport,* 40 Illinois, 197, 209; *Goldgart* v. *People,* 106 Illinois, 25; *In re Jefferson,* 35 Minnesota, 215; *Fitch* v. *York County,* 19 Nebraska, 50; *Savings & Loan Society* v. *Multnomah County,* 169 U. S. 422;

*New Orleans v. Stempel*, 175 U. S. 309; *Bristol v. Washington County*, 177 U. S. 133.

Assuming that Nash and his debtors owning property were without the jurisdiction of Indiana, and that the physical presence of the Ohio notes did not constitute taxable property in that State, the taxes assessed on them were without just foundation and are illegal, and the State of Indiana would, by enforcing the collection of them by its officers, deprive the plaintiff in error of his trust property, without due process of law.

Mr. *William R. Wood*, with whom *Mr. Cassius C. Hadley* and *Mr. J. Frank Hanly* were on the brief, for defendant in error:

The State cannot be deprived of its right to tax property within its jurisdiction by the owner thereof removing the property temporarily out of its jurisdiction for the purpose of avoiding taxation thereon. *Dundee Company v. School District*, 19 Fed. Rep. 368; *Savings Society v. Multnomah Co.*, 169 U. S. 421; *Connecticut Co. v. Town of Monroe*, 52 Atl. Rep. (N. H.) 942; *H. M. Loud & Sons Lumber Co. v. Elmer Township*, 123 Michigan, 61; *Shotwell v. Moore*, 129 U. S. 596; *Ogden, Treas., v. Walker*, 59 Indiana, 460; *Senour v. Matchett*, 140 Indiana, 640; *Crowder v. Riggs*, 123 Indiana, 160; *Diamond Match Co. v. Ontonagon*, 188 U. S. 91.

In determining what the law of a State is, this court will look not only at the state constitution and statutes, but at decisions of its highest court giving construction to them, and the construction given the statute of a State by its highest court will be adopted by this court. *Wade v. Travis County*, 174 U. S. 508; *New Orleans v. Stempel*, 175 U. S. 316; *Stockard v. Morgan*, 185 U. S. 30; *Williams v. Parker*, 188 U. S. 504; *Williams v. Eggleston*, 170 U. S. 311; *Board of Liquidation v. Louisiana*, 179 U. S. 638; *Yazoo & Mississippi Valley Railroad Co. v. Adams*, 181 U. S. 583; *Mead v. Portland*, 200 U. S. 164; *Armour Packing Co. v. Lacy*, 200 U. S. 234, 236.

The General Assembly of Indiana has power to make notes,

mortgages, bonds and other evidences of indebtedness taxable. The question as to the taxability of such property is therefore one of will or intention and not of power. *Hart* v. *Smith*, 159 Indiana, 185, 188, 193; *Gallup* v. *Schmidt*, 154 Indiana, 203; *Western &c. Co.* v. *Halliday*, 110 Fed. Rep. 264; *Pullman's &c. Co.* v. *Commonwealth of Pennsylvania*, 141 U. S. 18; *Finch* v. *County of York*, 26 N. W. Rep. (Neb.) 590; *Hutchinson* v. *Board*, 23 N. W. Rep. (Ia.) 250; *Tappan* v. *Merchants' Bank*, 19 Wallace, 490; *Savings Society* v. *Multnomah Co.*, 169 U. S. 421; *Coe* v. *Errol*, 116 U. S. 517.

Notes, bonds, mortgages and other evidences of indebtedness are "property" within the meaning of the Constitution, and ought to be assessed for taxation. In the construction of the legislative scheme of taxation the court ought to impute to the General Assembly an intent to obey the constitutional mandate if its enactments fairly admit of such construction. *Hart* v. *Smith*, 159 Indiana, 185.

It is not essential that both the owner and the thing assessed should be within the jurisdiction of the State. It is sufficient if either is within such jurisdiction. *Pullman's Co.* v. *Commonwealth*, 141 U. S. 18; *Goldgart* v. *People*, 106 Illinois, 28; *In re Romaine Estate*, 127 N. Y. 88; *In re Whiting Estate*, 150 N. Y. 29; *In re Morgan Estate*, 150 N. Y. 35; *In re Houdayer Estate*, 150 N. Y. 37.

The Ohio notes were not kept by plaintiff in error in Lafayette for clerical convenience. They were kept there permanently. They had at no time any other permanent location. They were kept there and held and controlled by Buck, as the agent of Nash, under such circumstances as to give them a taxable *situs* in Indiana. Acts 1891, p. 199, § 3; Acts 1891, p. 199, § 4; Acts 1891, p. 201, § 11; *Buck* v. *Miller*, 147 Indiana, 589; *Tousey* v. *Bell*, 23 Indiana, 426; *Schmidt* v. *Failey*, 148 Indiana, 153; *Powell* v. *City*, 21 Indiana, 340; *Rieman* v. *Shepard*, 27 Indiana, 289; *Standard Oil Co.* v. *Combs*, 96 Indiana, 183; *Board* v. *Standard Oil Co.*, 103 Indiana, 304.

The notes and mortgages, upon which the assessment in this

case is based, had a "business situs" in the city of Lafayette within the meaning of the law. Acts 1891, p. 199, § 3; Acts 1891, p. 199, § 4; Acts 1891, p. 201, § 11; *Buck v. Miller,* 147 Indiana, 589; *Tousey v. Bell,* 23 Indiana, 426; *Schmidt v. Failey,* 148 Indiana, 153; *Powell v. City,* 21 Indiana, 340; *Rieman v. Shepard,* 27 Indiana, 289; *Standard Oil Co. v. Combs,* 96 Indiana, 183; *Board v. Standard Oil Co.,* 103 Indiana, 304; *Western &c. Co. v. Halliday,* 110 Fed. Rep. 263.

Bank bills, municipal bonds, promissory notes and real estate mortgages have such a concrete form that they are subject to taxation where found, irrespective of the domicil of the owner. If such evidences of indebtedness are kept for an indefinite period, and are given a permanent location within the limits of the State, they are subject to taxation. *Buck v. Miller,* 147 Indiana, 586; *Tousey v. Bell,* 23 Indiana, 426; *Western &c. Co. v. Halliday,* 110 Fed. Rep. 264; *Black Hawk v. Dorris,* 90 N. W. Rep. (Ia.) 90; *Arosin v. London Co.,* 83 N. W. Rep. (Minn.) 340; *People v. Board,* 48 N. Y. 390; *People ex rel. v. Smith,* 88 N. Y. 581; *People v. Gaus,* 61 N. E. Rep. (N. Y.) 989; *Comptoir v. Board,* 27 So. Rep. (La.) 805.

No question in the case at bar, apart from the specific constitutional objection that the assessment of the property in issue contravenes § 1, Art. 14, of the Federal Constitution, is subject to review in this court. *Blackstone v. Miller,* 188 U. S. 207.

The assessment of the property in issue in this cause does not contravene § 1, Art. 14, of the Federal Constitution. Acts 1891, p. 199, § 4; § 1, Art. 14, U. S. Const.; *Pullman &c. Co. v. Commonwealth,* 141 U. S. 18; *New Orleans v. Stempel,* 175 U. S. 309; *Savings Society v. Multnomah Co.,* 169 U. S. 421; *Comptoir &c. Co. v. Board,* 27 So. Rep. 805.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The only question involved here is in regard to the taxability of the Ohio notes in the State of Indiana.

The plaintiff in error asserts that the simple physical presence

of the Ohio notes in Indiana payable to and not endorsed by the decedent, did not . constitute taxable property there, because such notes were given and were payable and were paid in Ohio by residents of Ohio, and to a non-resident of Indiana, and for loans made in Ohio, the capital represented by such notes never having been used in business in Indiana, and he insists that a tax upon such capital or upon the notes themselves as representing that capital is an illegal tax, and that to take property in payment of such an illegal tax is to take it without due process of law and constitutes a violation of the Fourteenth Amendment.

If the facts in this case constituted the debts evidenced by the Ohio notes property in the jurisdiction of the State of Indiana at the time when such taxes were imposed, then the tax was valid, if there were statutory authority of that State for the same. The state court has held that there was such authority, *Buck* v. *Miller,* 147 Indiana, 586; *Buck* v. *Beach,* 164 Indiana, 37, being the case at bar, and that construction of the statute concludes this court. *Delaware &c. Co.* v. *Pennsylvania,* 198 U. S. 341, 352.

The sole question then for this court is whether the mere presence of the notes in Indiana constituted the debts of which the notes were the written evidence, property within the jurisdiction of that State, so that such debts could be therein taxed.

Generally, property in order to be the subject of taxation must be within the jurisdiction of the power assuming to tax. *State Tax on Foreign-held Bonds,* 15 Wall. 300; *Erie Railroad* v. *Pennsylvania,* 153 U. S. 628, 646; *Savings Society* v. *Multnomah County,* 169 U. S. 421, 427; *Louisville &c.* v. *Kentucky,* 188 U. S. 385; *Delaware &c.* v. *Pennslyvania,* 198 U. S. 341; *Union Transit Co.* v. *Kentucky,* 199 U. S. 194; *Metropolitan Ins. Co.* v. *New Orleans,* 205 U. S. 395.

In regard to tangible property the old rule was *mobilia sequuntur personam,* by which personal property was supposed to follow the person of its owner, and to be subject to the law

of the owner's domicil. For the purpose of taxation, however, it has long been held that personal property may be separated from its owner, and he may be taxed on its account at the place where the property is, although it is not the place of his own domicil, and even if he is not a citizen or resident of the State which imposes the tax. *Pullman Palace Car Co. v. Pennsylvania,* 141 U. S. 18, 22; *Tappan v. Merchants' National Bank,* 19 Wall. 490; *People ex rel. Hoyt v. The Commissioner of Taxes,* 23 N. Y. 224, 240. The same rule applies to intangible property. Generally speaking, intangible property in the nature of a debt may be regarded, for the purposes of taxation, as situated at the domicil of the creditor and within the jurisdiction of the State where he has such domicil. It is property within that State. Thus it has been held that a debt owned by a citizen of one State against a citizen of another State and evidenced by the bond of the debtor, secured by a deed of trust or mortgage upon real estate situated in the State where the debtor resides, is properly taxed by the State of the residence of the creditor, if the statute of that State so provides, and such tax violates no provision of the Federal Constitution. *Kirtland v. Hotchkiss,* 100 U. S. 491, 498.

Rejecting the fiction of law in regard to the *situs* of personal property, including therein choses in action, the courts of Indiana have asserted jurisdiction by reason of the statute of that State over these Ohio notes for the purpose of taxation in Indiana, founded upon the simple fact that such notes were placed in the latter State by the Ohio agent of the decedent under the circumstances above set forth. The Supreme Court of Indiana refused to accept the testimony of the agents that the Ohio notes were sent to Lafayette merely for safe keeping, and for clerical convenience, and said that " the court below was authorized to make the opposite deduction from the uniform course of the business in respect to the keeping of said notes and mortgages and from the evidence that decedent gave the direction which established the practice that was pursued in that particular. More than that, the evidence

clearly warranted the conclusion that Buck was vested with a control of said notes and securities for the purposes of enabling decedent to escape taxation in Ohio. We must, therefore, conclude, in support of the general finding, that the court below found that in the conducting of the business of the Ohio agency the decedent separated from said business the possession of said notes and mortgages and vested the right to such possession in said Buck. There was no return for taxation of said notes, or of the investments represented by them, either in Ohio or in New York during the lifetime of the decedent."

Taking this to be a finding of fact by the Supreme Court of the State, it is plain that the action of the decedent in sending the Ohio notes into the State of Indiana for the purpose stated (whether successful or not), was improper and unjustifiable. The record does show, however, that the executors subsequently paid the Ohio authorities over $40,000 for taxes on the moneys invested in Ohio.

But an attempt to escape proper taxation in Ohio does not confer jurisdiction to tax property asserted to be in Indiana, which really lies outside and beyond the jurisdiction of that State. Jurisdiction of the State of Indiana to tax is not conferred or strengthened by reason of the motive which may have prompted the decedent to send into the State of Indiana these evidences of debts owing him by residents of Ohio. The question still remains, was there any property within the jurisdiction of the State of Indiana, so as to permit that State to tax it, simply because of the presence of the Ohio notes in that State? It was not the value of the paper as a tangible thing, on which these promises to pay the debts existing in Ohio were written, that was taxed by that State. The property really taxed was the debt itself, as each separate note was taxed at the full amount of the debt named therein or due thereon. And jurisdiction over these debts for the purpose of taxation was asserted and exercised solely by reason of the physical presence in Indiana of the notes themselves,

although they were only written evidence of the existence of the debts which were in fact thereby taxed.

A distinction has been sometimes taken between bonds and other specialty debts belonging to the deceased, on the one hand, and simple contract debts on the other, for the purpose of probate jurisdiction, and the probate court, where the bonds are found, has been held to have jurisdiction to grant probate, while in the other class of debts (including promissory notes) jurisdiction has attached to the probate court where the debtor resided at the death of the creditor. 1 Williams on Executors, 6th Am. from 7th English ed., bottom paging 288, 290, note [h]; *Wyman* v. *Halstead Adm'r,* 109 U. S. 654. See also *Beers* v. *Shannon,* 73 N. Y. 292, 299; *Owen* v. *Miller,* 10 Ohio St. 136.

Under such rule, the debts here in question were not property within the State of Indiana, nor were the promissory notes themselves, which were only evidence of such debts. The rule giving jurisdiction where the specialty may be found, has no application to a promissory note. Assuming such a rule, the case here is not covered by it.

Questions of the validity of state taxation with reference to the Federal Constitution have become quite frequent in this court within the last few years. The case of *Metropolitan Life Insurance Company* v. *The City of New Orleans,* 205 U. S. 395, is the latest. The question there was in relation to the validity of certain taxes assessed in the city of New Orleans against the Metropolitan Life Insurance Company by reason of the company doing business in lending money to the holders of its policies in New Orleans. The domicil of the company was in the city of New York, and the evidences of the credits, in the form of notes, were kept most of the time in New York, being sent to New Orleans when due. The tax was, under the laws of the State of Louisiana, levied on the "credits, money loaned, bills receivable," etc., of the plaintiff in error and its amount was ascertained by computing the sum of the face value of all the notes held by the company in New Orleans

at the time of the assessment. The assessment was made under an act which provided that "bills receivable, obligations, or credits arising from the business done in this State," shall be assessable at the business domicil of the non-resident, the assessment being made in such a way under the statute as would "represent in their aggregate a fair average on the capital, both cash and credits, employed in the business of the party or parties to be assessed." The tax was sustained because, as is stated in the opinion of the court, which was delivered by Mr. Justice Moody, "the insurance company chose to enter into the business of lending money within the State of Louisiana, and employed a local agent to conduct that business. It was conducted under the laws of the State. The State undertook to tax the capital employed in the business precisely as it taxed the capital of its own citizens in like situation. For the purpose of arriving at the amount of capital actually employed, it caused the credits arising out of the business to be assessed. We think the State had the power to do this, and that the foreigner doing business cannot escape taxation upon his capital by removing temporarily from the State evidences of credits in the form of notes. Under such circumstances, they have a taxable situs in the State of their origin." The temporary absence of the notes, given for the loans, from the State (being in New York, the domicil of the company) except when they became due, was regarded as unimportant. The law, it was said, regarded the place of their origin as their true home, to which they would return to be paid, and their temporary absence, however long continued, was left out of account.

The prior cases of *New Orleans* v. *Stempel*, 175 U. S. 309, and *Board of Assessors* v. *Comptoir National*, 191 U. S. 388, were also cited. In the first there was a tax on credits, evidenced by notes (secured by mortgages on real estate in New Orleans) which the owner a non-resident, who had inherited them, left in Louisiana in the possession of an agent, who collected the principal and interest as they became due. The

capital of the owner was thus invested in the State, and was thereby subject to taxation there, and the notes did not alter the nature of the debt, but were merely evidence of it. In the latter case a foreign banking company did business in New Orleans, and through an agent lent money which was evidenced by checks drawn upon the agent, treated as over-drafts and secured by collateral, the checks and collateral remaining in the hands of the agent until the transactions were closed. The credits thus evidenced were held taxable in Louisiana. The corporation was held to be doing business and had capital employed in the city of New Orleans, to the extent of the assessment made upon it therein.

In *Bristol* v. *Washington County,* 177 U. S. 133, the assessment was upheld because it appeared that the person assessed was doing business in Minnesota through an agent, in lending money in that State, which was secured by mortgages on real property therein. The amount of money thus invested in that State was held to be properly taxable therein.

In *Savings & Loan Society* v. *Multnomah County,* 169 U. S. 421, the assessment was upon the real estate mortgaged, the interest of the mortgagee therein being taxed to him and the rest to the mortgagor, and it was held by this court that the fact that the mortgage was owned by a citizen of another State, and in his possession outside of the State of Oregon, where the real estate was situated, did not violate the Four-teenth Amendment. It was stated that "The State may tax real estate mortgaged, as it may all other property within its jurisdiction, at its full value. It may do this, either by taxing the whole to the mortgagor, or by taxing to the mortgagee the interest therein represented by the mortgage, and to the mortgagor the remaining interest in the land. And it may, for the purposes of taxation, either treat the mortgage debt as personal property, to be taxed like other choses in action, to the creditor at his domicil; or treat the mortgagee's interest in the land as real estate, to be taxed to him, like other real property at its *situs.*" Under the statute of Oregon

the assessment was made against the mortgagee upon his interest in the land as real estate.

There are no cases in this court where an assessment such as the one before us has been involved. We have not had a case where neither the party assessed nor the debtor was a resident of or present in the State where the tax was imposed, and where no business was done therein by the owner of the notes or his agent relating in any way to the capital evidenced by the notes assessed for taxation. We cannot assent to the doctrine that the mere presence of evidences of debt, such as these notes, under the circumstances already stated, amounts to the presence of property within the State for taxation. That promissory notes may be the subject of larceny, as stated in 48 N. Y. cited below, does not make the debts evidenced by them, property liable to taxation within the State where there is no other fact than the presence of the notes upon which to base the claim.

In *People* v. *The Board of Trustees &c.*, 48 N. Y. 390, it was held that money due upon a contract for the sale of land was personal property, and that where such contract belonging to a non-resident was in the hands of a resident agent, it might, for the purposes of municipal taxation, be assessed to the agent and taxed. In the opinion Judge Earl said: "The debts due upon these contracts are personal estate, the same as if they were due upon notes or bonds; and such personal estate may be said to exist where the obligations for payment are held." The contracts spoken of in that case were contracts for the sale of land by a non-resident owner to persons within the county where the lands were situated. The debtors resided within the State, and the agent of the non-resident for the sale of the land resided in the State and had possession of the contracts. A different case as to its facts from the one before us.

In *People* v. *Smith*, 88 N. Y. 576, jurisdiction to tax in New York was denied under the statute of that State, because the personal estate was not within the State, although the

same principle, page 581 as contained in 48 N. Y., *supra,* was asserted.

If payment of these notes had to be enforced it would not be to the courts of Indiana that the owner would resort. He would have to go to Ohio to find the debtor as well as the lands mortgaged as security for the payment of the notes. It is true that if the notes were stolen while in Indiana, and they were therein a subject of larceny, the Indiana courts would have to be resorted to for the punishment of the thieves. That would be in vindication of the general criminal justice of the State. This consideration, however, is not near enough to the question involved to cause us to change our views of the law in regard to the taxation of property, and make that property within the State, which we think is clearly outside it.

Although public securities, consisting of state bonds and bonds of municipal bodies, and circulating notes of banking institutions have sometimes been treated as property in the place where they were found, though removed from the domicil of the owner, *State Tax on Foreign-held Bonds,* 15 Wall. 300, 324, it has not been held in this court that simple contract debts, though evidenced by promissory notes, can under the facts herein stated be treated as property and taxed in the State where the notes may be found.

As is said in the above cited case at page 320: "All the property there can be in the nature of things in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicil, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities, and no forms of expressions could add anything to its obvious truth, which is recognized upon its simple statement."

The cases cited in *Metropolitan Insurance Co.* case, *supra,* show that this rule is enlarged to the extent of holding that capital, evidenced by written instruments, invested in a

State may be taxed by the authorities of the State, although their owner is a non-resident and such evidences of debt are temporarily outside of the State when the assessment is made. Although the language of the opinion in the case of *State Tax on Foreign-held Bonds, supra,* has been somewhat restricted so far as regards the character of the interest of the mortgagee in the land mortgaged, *Savings &c. Society* v. *Multnomah County,* 169 U. S. 421, 428, the principle upon which the case itself was decided has not been otherwise shaken by the later cases. *New Orleans* v. *Stempel,* 175 U. S. 309, 319, 320; *Blackstone* v. *Miller,* 188 U. S. 189, 206. In the *Stempel case, supra,* the notes, as we have said, represented the capital of the owner invested in the State, and the capital was taxed, although the owner was a non-resident.

Cases arising under collateral inheritance tax or succession tax acts have been cited as affording foundation for the right to tax as herein asserted. The foundation upon which such acts rest is different from that which exists where the assessment is levied upon property. The succession or inheritance tax is not a tax on property, as has been frequently held by this court, *Knowlton* v. *Moore,* 178 U. S. 41, and *Blackstone* v. *Miller,* 188 U. S. 189, and therefore the decisions arising under such inheritance tax cases are not in point.

Our decision in this case has no tendency to aid the owner of taxable property in any effort to avoid or evade proper and legitimate taxation. The presence of the notes in Indiana formed no bar to the right, if it otherwise existed, of taxing the debts, evidenced by the notes, in Ohio. It does, however, tend to prevent the taxation in one State of property in the shape of debts not existing there and which if so taxed would make double taxation almost sure, which is certainly not to be desired and ought, wherever possible, to be prevented.

For the reason that as the assessment in this case was made upon property which was never within the jurisdiction of the State of Indiana the State had no power to tax it, and the

enforcement of such a tax would be the taking of property without due process of law.

The judgment of the Supreme Court of Indiana is reversed and the case remanded for further proceedings not inconsistent with the opinion of this court.

*Reversed.*

MR. JUSTICE DAY, dissenting:

I am unable to concur in the opinion and judgment of the court in this case and believe that its importance and far-reaching effect warrant a statement of the grounds upon which I differ.

Before stating the view which it seems to me should be controlling I believe that the statement of facts, as outlined by the learned justice speaking for the court, should be somewhat amplified with a view to a more complete showing of the case.

The office in Lafayette, Indiana, was the office of Nash, for which he paid the rent. The safes in which the notes were kept in this office were the safes of Nash, and the power of attorney under which the agent held the "Ohio notes" not only authorized him to enter satisfaction of them when paid, but gave him complete control and dominion over them with power of sale. And while it does not clearly appear that the proceeds of the notes in question were reinvested by the agent in Indiana, it does appear that after 1886 large sums of money were sent from Cincinnati to Lafayette and were invested by Nash's agent in Indiana. Furthermore, in the opinion it is said that the executors, subsequently to the death of Nash, paid over $40,000 of taxes on money invested in Ohio. It does appear that after the death of Nash, under the Ohio law the auditor of Hamilton County instituted a proceeding for the collection of five years (of the thirteen here involved) of back taxes upon some of the notes representing the Ohio investments, and rather than litigate, a settlement was made

by the executors for this five years' claim in the sum of $40,000.
Whether that was for the notes here in question the record
does not disclose. As the Ohio agent testified, only a part of
the Ohio notes were sent to Indiana, and others in large amounts
were kept in Ohio. We know of no statute in Ohio which
would tax the notes permanently kept in Indiana, and none
is pointed out. The Supreme Court of Indiana in this case
reached the conclusion that these particular notes were not
taxable in Ohio. Of course the settlement of the claim could
not affect the legal proposition here involved, but for ac-
curacy of statement it must not be regarded that equitably
the claim for taxes upon these notes has been satisfied. On
the contrary, this record discloses that by the scheme adopted
more than three-quarters of a million of dollars in capital in-
vested in notes and mortgages successfully evaded taxes
during Nash's lifetime in New York, where he was domiciled,
and in Ohio and Indiana, where his agents were loaning his
money for him and where his notes and mortgages, the re-
sults of such loans, were held for him.

Accepting the decision of the Supreme Court of the State
that a statute of the State has undertaken to tax these notes,
it is now held that the Constitution of the United States pre-
vents such taxation of notes and mortgages held under the
protection and within the power of the State by the agent
of a non-resident owner, although such agent holds the securi-
ties in an office belonging to the owner, in a safe provided by
him, with a power of attorney which gives him full domin-
ion over them, and for the convenience of the owner keeps
a book in which transactions concerning them are recorded
at the instance of the owner, and sends them out for collection.
These notes were sent beyond the borders of the State of
Indiana only for collection, or for the few days when they
were supposed to be liable for taxation, and, when such danger
was thought to be past, returned to the agent in Indiana.

I agree that a debt intangible in form cannot acquire a
*situs* for the purpose of taxation, but I submit that when a

debt takes the shape of note and mortgage it may, if the State, in the exercise of its taxing. power so wills, acquire· a *situs* separate from the domicil of the owner under the circumstances shown in this case. I concede that the precise point here involved has not been decided in· previous cases in this court, but in my view. the principles declared in this court were followed in the Supreme Court of Indiana and require the affirmance of its judgment. ·

This court in a series of cases has held that notes, bonds and mortgages may acquire a *situs* at the place where they are held. Some of the cases are: *New Orleans* v. *Stempel,* 175 U. S. 309·; *Bristol* v. *Washington County,* 177 U.. S. 133; *Blackstone* v. *Miller,* 188 U. S. 189; *Board of Assessors* v.· *Comptoir National,* 191 U. S. 388, 403; *Carstairs* v. *Cochran,* 193 U. S. 10; *Scottish Union & Nat. Ins. Co.* v. *Bowland,* 196 U. S. 611.

It would unnecessarily extend this dissent to analyze these cases. Brief reference to some of them, in my judgment, shows that the principles therein declared, when .extended to this. case, would warrant the State, if it so chose in exerting its taxing power, to reach notes and mortgages. held within its jurisdiction under the circumstances which we have detailed.

In *New Orleans* v. *Stempel,* 175 U. S. 309, a tax on credits . evidenced by notes and secured by mortgages was upheld, where the owner left. them. in Louisiana in the possession of an agent who collected the same as they fell due.. There was no fact of investment and reinvestment of capital in the case, and the court, speaking through Mr. Justice Brewer, said:

"This matter of *situs* may be regarded·in another aspect. In the absence of statute, bills and notes are treated as choses in action and are not subject to levy and sale on execution, but by the statutes of many States they are made so subject to seizure and sale as any tangible personal property. 1 Freeman on Executions, § 112; 4 Am. and Eng. Enc. of Law, 2d ed., 282; 11 Am. and Eng. Enc. of Law, 2d ed., 623. Among the States referred to in these authorities as having statutes war-

ranting such levy and sale are California, Indiana, Kentucky, New York, Tennessee, Iowa, and Louisiana. *Brown* v. *Anderson*, 4 Martin (N. S.), 416, affirmed the rightfulness of such a levy and sale. In *Fluker* v. *Bullard*, 2 La. Ann. 338, it was held that if a note was not taken into the actual possession of the sheriff a sale by him on an execution conveyed no title on the purchaser, the court saying: 'In the case of *Simpson* v. *Allain*, it was held that, in order to make a valid seizure of tangible property, it is necessary that the sheriff should take the property levied upon into actual possession.' 7 Rob. 504. In the case of *Gobeau* v. *New Orleans & Nashville Railroad Company* the same doctrine is still more distinctly announced. The court there says: 'From all the different provisions of our laws above referred to, can it be controverted that, in order to have them carried into effect, the sheriff must necessarily take the property seized into his possession? This is the essence of the seizure. It cannot exist without such possession.' 6 Rob. 348. It is clear, under these authorities, that the sheriff effected no seizure of the note in controversy, and consequently his subsequent adjudication of it conferred no title on Bailey.

"The same doctrine was reaffirmed in *Stocto* v. *Stanbrough*, 3 La. Ann. 390. Now if property can have such a situs within the State as to be subject to seizure and sale on execution, it would seem to follow that the State has power to establish a like *situs* within the State for the purposes of taxation. It has also been held that a note may be made the subject of seizure and delivery in a replevin suit. *Graff* v. *Shannon*, 7 Iowa, 508; *Smith* v. *Eals*, 81 Iowa, 235; *Pritchard* v. *Norwood*, 155 Massachusetts, 539.

"It is well settled that bank bills and municipal bonds are in such a concrete tangible form that they are subject to taxation where found, irrespective of the domicil of the owner, are subject to levy and sale on execution and to seizure and delivery upon replevin; and, yet, they are but promises to pay, evidences of existing indebtedness. *Notes and mortgages are of the same nature; and, while they may not have be-*

come so generally recognized as tangible personal property, yet they have such a concrete form that we see no reason why a State may not declare that, if found within its limits, they shall be subject to taxation."

In commenting on this case and *State Assessors* v. *Comptoire National &c.,* 191 U. S. 388, Mr. Justice Moody, speaking for the court in the late case of *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395, said: "In both of these cases the written evidences of the credits were continuously present in the State, and their presence was clearly the dominant factor in the decisions."

In *Blackstone* v. *Miller,* 188 U. S. 206, Mr. Justice Holmes, speaking for the court, said:

"There is no conflict between our views and the point decided in the case reported under the name of *State Tax on Foreign-held Bonds,* 15 Wall. 300; 21 L. ed. 179. The taxation in that case was on the interest on bonds held out of the State. *Bonds and negotiable instruments are more than merely evidences of debt.* The debt is inseparable from the paper which declares and constitutes it by a tradition which comes down from more archaic conditions. 177 Massachusetts, 335, 337."

To the consideration of the subject in the opinions of the learned justices just quoted, it may be added that bills and notes are the subject of conversion in trover, and the measure of damages is the collectible value of the obligation. *Mercer* v. *Jones,* 3 Camp. 477; 2 Ames on Bills and Notes, p. 693, and numerous cases there cited. Bills and notes may be the subject of *donatio causa. mortis,* even though payable to order and unendorsed. 2 Ames' Bills and Notes, 699–701. They are held to be governed by the designation of "goods and chattels" in the statute of frauds and other statutes. 2 Ames' Bills and Notes, 706.

Bills and notes have been held to be "goods, wares and merchandise" within the meaning of the statute of frauds. *Baldwin* v. *Williams,* 3 Met. 365; *Somerby* v. *Buntin,* 118 Massachusetts, 279.

In view of this recognition of the character of bills and notes as tangible property, it seems to me inaccurate to say that they are mere evidences of debt. They are tangible things, capable of delivery; passing from hand to hand, and for many purposes may be regarded as of the value of the debt which they evidence.

It is elementary that the power of the States as to matters of taxation is very broad, and subject only in the limitation of its exercise to the constitution of the State and the Nation.

It seems to me that a State, in pursuance of its taxing policy, may give a *situs* to such evidences of debt held within its jurisdiction as have taken the tangible form of bonds, notes and mortgages.

It is said to deny this power to the States, under the circumstances of this case, will tend to prevent double taxation—a thing much to be desired. This case seems to me an apt illustration of the contrary view, by denying the power to Indiana to tax these notes under the circumstances shown, the scheme of the owner to avoid any tax upon them is made effectual, and, except for the recovery after his death for a small part of the taxes actually due, this vast sum of money escapes taxation altogether. I think that the powers of taxation here invoked by the State of Indiana ought not to be denied, and if the practical effect can be given any weight in deciding legal rights, to me it seems evident that such denial will work immunity from just taxation of property represented in promissory notes and mortgages sent beyond the jurisdiction of the State where the owner is domiciled and held by agents in distant States within the protection of their laws, for the sole purpose of avoiding contribution to the public treasury. As I understand the opinion, municipal bonds, or other such securities held as these are, would be legitimately subject to taxation. They are but promises to pay in a concrete form of the same character as notes and mortgages. In my opinion there is no constitutional objection to their localization for

taxation by the law of the State when the owner has chosen to give them a *situs* there as in this case.

Without further extending these views, I am constrained to dissent from the opinion and judgment of the court in this case.

MR. JUSTICE BREWER concurs in this dissent.